THE PLEASANT VALLEY WINE CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19394. Promulgated March 31, 1950.

*Carl K. Goodson, Esq.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge*: The petitioner filed an application for relief under section 722 with relation to its fiscal year ended August 31, 1944. The Commissioner held that it was not timely filed and disallowed it for that reason. The only issue for decision at this time is whether the application for relief was timely filed. The parties have filed a stipulation of facts.

Section 722 (d) provides that the benefits of that section shall not be allowed unless the taxpayer makes application therefor within the period of time prescribed by section 322. Section 322 (b) (1) provides that unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed, or within two years from the time the tax was paid, no credit or refund shall be allowed after the expiration of whichever of those periods is the longer. It also provides that a return filed before the last day for filing shall be considered as filed on the last day for the purpose of the section. The parties recognize that generally an application is filed upon receipt by the Bureau, but not before.

The Commissioner, in his notice rejecting the claim, stated: "The records of the Bureau disclose that your excess profits tax return was

received on November 14, 1944, and was considered under the law as filed November 15, 1944." . He also stated that the last tax payment was on August 13, 1945. The last date for filing the claim under those circumstances would be November 15, 1947.

The petitioner placed its application for relief in an envelope addressed to the Commissioner of Internal Revenue, Washington, D. C., attached sufficient postage, and placed it in the United States Post Office at Hammondsport, New York, as first class mail, on Friday, November 14, 1947, between 4:30 p. m. and 4:55 p. m. Mail thus deposited would follow one of the two routes, one of which would bring it to Washington on a train due to arrive there at 9:35 a.m., the day after mailing; the other on a train due to arrive in Washington at 1:10 p. m., the day after mailing. Although the Bureau of Internal Revenue was not open officially for business on Saturday, November 15, 1947, nevertheless, there were two mail deliveries from the City Post Office in Washington to the Bureau of Internal Revenue Building on Saturday, November 15, 1947, the last of which left the City Post Office at 10 a. m. The envelope containing the petitioner's application for relief would not have been delivered to the Bureau of Internal Revenue in either of those deliveries. The petitioner's application for relief is stamped "Bureau of Internal Revenue Mail Room Nov 17 PM 12 40."

The petitioner makes two arguments in support of its contention that its application received on the 17th was timely filed. The first is that Saturday is a legal holiday and, like the next day, Sunday, must be excluded, so that the period of limitation on the filing of the claim would include all of Monday, the 17th. The other argument is that if Saturday is not a legal holiday, nevertheless, the closing of the Bureau of Internal Revenue on that day denied the petitioner full opportunity to file its application within the statutory period and the filing on the 17th must be accepted, *nunc pro tunc*, as filing on the 15th.

The petitioner in support of its first argument points out that the Bureau of Internal Revenue had previously established a five-day workweek running from Monday through Friday, under authority of the Federal Employees Pay Act, Public Law 106, 79th Congress, 1st sess., dated June 30, 1945, and, as a consequence, was not officially open for business on Saturday, November 15, 1947. It argues that for all practical purposes Saturday was then no different from Sunday. It cites a number of cases, some of them by the Supreme Court, holding that where the last day of a period within which some act must be performed falls on a Sunday or a legal holiday, then the period runs until the end of the next day which is neither a Sunday nor a legal holiday. It admits that there is some conflict of decisions

on that subject and the respondent has cited some cases holding the other way. However, this conflict need not be resolved in this case because here the last day did not fall on Sunday or a legal holiday. It fell on a Saturday, which was neither a legal holiday, so far as this record shows, nor a day to be treated like Sunday for the purpose of any well established rule extending the period here involved, a period fixed by law.

A legal holiday is one declared by law to be a holiday. For a list of legal holidays in the District of Columbia and the acts declaring them to be such, see Rule 61 of this Court.[1] The experience of this Court furnishes a helpful analogy in this case. It was provided originally that a petition could be filed with the Board of Tax Appeals "within 60 days after such notice is mailed," sec. 274 (a), Revenue Act of 1924, and it was held that if the sixtieth day fell on a Sunday, the Board had no jurisdiction to receive the petition on the following Monday. *Sam Satovsky*, 1 B. T. A. 22. Congress, to overcome this difficulty, changed the law so that it read "within 60 days after such notice is mailed (not counting Sunday as the sixtieth day)." Sec. 274 (a), Revenue Act of 1926. There were further changes in this provision, and at the beginning of 1945 the provisions were "within ninety days after such notice is mailed (not counting Sunday or a legal holiday in the District of Columbia as the ninetieth day)." Secs. 272 (a) (1), 732 (a), 871 (a) (1), and 1012 (a) (1), I. R. C. The Tax Court likewise established a five-day workweek in accordance with the Federal Employees Pay Act of 1945, and thereafter Congress changed the parenthetical part of all of the provisions just mentioned, effective as of September 8, 1945, to include Saturday as a day not to be counted as the ninetieth day. Sec. 203, Public Law 291, ch. 652, 79th Cong., 1st sess., approved Dec. 29, 1945.[2] Although Congress, in section 201 of the act just cited, extended section 322 (b) (1) to some extent, nevertheless, it did not make Saturday a legal holiday or make any provision in section 322 (b) (1) to cover a situation where the last day of the limitation period therein fixed falls upon a Saturday. This would indicate that Congress had the subject in mind, but did not intend the period here involved to be extended if it ended on a Saturday. Cf. *Meyer* v. *Hot Springs Impt. Co.*, 169 Fed. 628. Sunday involves religious and long established legal and commercial habits and customs, whereas Saturday does not. Nor is there any well established common law rule relating to periods ending on Saturday. Cf. *Sherwood Brothers, Inc.* v. *District of Columbia*, 113 Fed. (2d) 162. Furthermore, the record in this case shows that the Bureau of Internal

[1] "An Act Providing for Saturday Half Holidays for Certain Government Employees," ch. 396, 46 Stat. 1482, 71st Cong., 3d sess., March 3, 1931, was repealed by the "Federal Employees Pay Act of 1945," ch. 212, 59 Stat. 303, 79th Cong., 1st sess., June 30, 1945.

[2] The Court had continued to have its docket room open on Saturdays for the receipt of petitions and had continued to collect its mails on Saturdays through September 8, 1945.

Revenue was open for some purposes on Saturday, November 15, 1947, for the post office was able to make two mail deliveries on that day. The record does not show the time of any possible later delivery, whether or not the Bureau was open for other purposes on that day, or the extent to which it was open. Saturday, November 15, 1947, was not a legal holiday or a day to be treated like Sunday for the purpose urged by the petitioner and, therefore, the question of whether the period provided by sections 722 (d) and 322 would be extended if the last day fell on a Sunday need not be decided.

The petitioner's second contention is that the failure to file the application on the 15th was due to the fact that the Bureau of Internal Revenue was not officially open on that day and thus the Bureau itself denied the petitioner the opportunity to file on that day to which it was entitled under the law and, consequently, the filing on Monday must be regarded as a filing on Saturday. The petitioner recognizes that it must take the risks of delays in the mail. The petitioner, in order to make this argument, must show that the application would actually have been delivered to the Bureau on the 15th had the Bureau been open officially for a reasonable working day on Saturday, the 15th. The evidence does not show such facts. The stipulation merely shows that the envelope containing the application would have arrived in Washington either at 9:35 a. m. or at 1:10 p. m. on the 15th if the trains had been on time and if there had been no delay in the mails, but not that it actually arrived in Washington in time for the post office to make a delivery on the 15th even if the Bureau of Internal Revenue had been open officially for an appropriate period on that day.

The Bureau was formerly open officially until about 1 o'clock on Saturdays. The application herein question, if it had arrived in the ordinary course of the mails at 1:10 p. m., would have been too late for delivery during the regular Saturday half-day working hours of the Bureau if they had been in vogue in November, 1947. The petitioner does not suggest or cite any case holding that an application arriving too late for receipt on such a day would nevertheless have been timely had that been the last day. The application was stamped "received" in the mail room of the Bureau of Internal Revenue at 12:40 p. m. on Monday, the 17th, a day upon which the Bureau of Internal Revenue was officially open for business. If that means that it was not received in the first delivery for that day, then it indicates that the application certainly was not received by the post office authorities in Washington in time for a delivery on the 15th. There is no explanation of why the application arrived so late that it was marked received at 12:40 p. m. on the 17th in the mail room of the Bureau of Internal Revenue. The record does not show how many deliveries, if any, preceded the one from which mail would be stamped 12:40 p. m., but it does not show that there were not earlier deliveries.

It may not be assumed in the petitioner's favor that the delay was in any way due to the fact that the Bureau of Internal Revenue was not open officially for business on the 15th or that the 16th was a Sunday. Any failure of proof must work to the petitioner's disadvantage, since the application was due on the 15th and was not actually received until the 17th. Thus, the petitioner has failed to show that its application would have been delivered by the post office authorities to the Bureau authorities within reasonable working hours on the 15th, or at any time on the 15th, if the Bureau had been officially open for business on that day. The petitioner's second argument falls for lack of proof of facts to support it.

*Decision will be entered for the respondent.*