GLENSHAW GLASS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36536. Filed March 9, 1956.

*Sidney B. Gambill, Esq.*, for the petitioner.
*Irene F. Scott, Esq.*, for the respondent.

SUPPLEMENTAL OPINION.

ARUNDELL, *Judge:* Pursuant to our report in this case filed March 14, 1955 (23 T. C. 1004), the parties filed separate computations for entry of decision under Rule 50. They agree that petitioner is entitled to overpayments for each of the 4 years involved. They also agree as to the amounts of the respective overpayments, except that for the fiscal year ended September 30, 1943, the respondent contends that upon the authority of *General Lead Batteries Co.*, 20 T. C. 685 (appeal to C. A. 3 dismissed in accordance with the agreement of the parties), out of the total overpayment of $22,317.14 for that year, only the amount of $15,173.90 paid on June 16, 1950, is refundable and that the balance of $7,143.24 is barred by the statute of limitations. A hearing was held in the matter on December 14, 1955, at which hearing it was agreed that the parties would file a stipulation of facts and briefs, all of which have been received. The stipulation is incorporated herein by reference and is summarized below.

A few days prior to December 10, 1946, the Pittsburgh office of the internal revenue agent in charge mailed to petitioner a revenue agent's

report proposing a deficiency in excess profits tax for the fiscal year ended September 30, 1943, in the amount of approximately $71,000. On December 10, 1946, petitioner's then counsel requested an extension of time in which to file a protest against the revenue agent's report. On December 11, 1946, W. P. Mays, the then internal revenue agent in charge of the Pittsburgh office, mailed a letter to petitioner's then counsel stating as follows:

Receipt is acknowledged of your letter of December 10, 1946, in which you requested an extension of time in which to file a protest against our report of the above-named taxpayer.

In compliance with your request, an extension of time will be granted you to January 19, 1946, [*sic*] providing the enclosed Form 872 is signed and returned to this office within 10 days from the date of this letter.

The body of the Form 872 [1] enclosed with the letter from the internal revenue agent in charge had been filled out prior to its submission to counsel for petitioner and by its terms extended the period of limitations for the taxable year ended September 30, 1943, to June 30, 1948.

On December 12, 1946, petitioner's then counsel mailed the Form 872 to the president of petitioner with the request that it be immediately executed and forwarded by registered mail to Mays. On December 13 or December 14, 1946, the Form 872 enclosed with Mays's letter of December 11, 1946, was signed by the president of petitioner on behalf of petitioner and mailed by registered mail to Mays.

The Form 872 was received in the office of Mays on December 16, 1946, and was personally signed by Mays on that date on behalf of the Commissioner.

Throughout 1946, Mays was authorized by the Commissioner to consent in writing to extensions of the period of limitations upon assessment of income and excess profits taxes.

On July 14, 1947, the respondent mailed to petitioner a statutory notice of deficiency setting forth a deficiency in excess profits tax for the fiscal year ended September 30, 1943, in the amount of $70,972.35. At the time this statutory notice of deficiency was mailed to petitioner, the statute of limitations on the assessment of a deficiency had expired unless there was then in existence a valid consent in writing under sections 275 (a) and 276 (b) of the Internal Revenue Code of 1939.

Following the issuance of the statutory notice of deficiency mentioned in the preceding paragraph, petitioner timely filed a petition in the Tax Court asking a review of the determination therein. This proceeding was given Docket No. 15986. In that proceeding neither party raised any issue with respect to the statute of limitations.

---

[1] Form 872 is captioned "CONSENT FIXING PERIOD OF LIMITATION UPON ASSESSMENT OF INCOME AND PROFITS TAX."

As a result of the proceeding described in the preceding paragraph, which was heard by the Court on its merits (13 T. C. 296), it was determined that there was a deficiency in excess profits tax for the fiscal year ended September 30, 1943, in the amount of $15,173.90, which was paid on June 16, 1950.

Prior to the June 16, 1950, payment of $15,173.90, petitioner paid the following amounts of excess profits taxes for the fiscal year ended September 30, 1943:

| Date of payment | Amount of payment |
|---|---|
| Dec. 8, 1943 | $31,500.59 |
| Feb. 22, 1944 | 31,497.19 |
| June 17, 1944 | 30,565.39 |
| Sept. 15, 1944 | 30,470.14 |

The end of the statutory period of 3 years following the due date for the filing of petitioner's return for the taxable year ended September 30, 1943, fell on December 15, 1946, which was a Sunday (the return was actually filed on December 4, 1943.)

On January 19, 1948, petitioner filed an application for relief under section 722 of the Internal Revenue Code of 1939 for the fiscal year ended September 30, 1943. The notice of disallowance under section 732, Internal Revenue Code of 1939, was sent to petitioner by registered mail on June 19, 1951. The disallowance was on the merits and not because of the running of the statute of limitations.

The parties agree that of the overpayment of $22,317.14 for the fiscal year ended September 30, 1943, the amount paid on June 16, 1950, of $15,173.90 is refundable. Under the applicable statute,[2] if any portion of the balance of the overpayment in the amount of $7,143.24 is refundable, this Court must determine as a part of its decision that such portion ($7,143.24) was paid within 3 years before the execution of the agreement (Form 872) *providing* the agreement was executed *within* 3 years from the time the return was filed. The return was actually filed on December 4, 1943, but by virtue of section 275 (f) of the 1939 Code it shall be considered as filed on December 15, 1943. Therefore, the agreement would have to be "executed" on or before December 15, 1946, which date fell on a Sunday.

It has been stipulated that throughout 1946 Mays had express written authority from the Commissioner to sign the Commissioner's name

---

[2] SEC. 322. REFUNDS AND CREDITS.

(d) OVERPAYMENT FOUND BY BOARD.—* * * No such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision (1) that such portion was paid (A) within two years before * * * the execution of an agreement by both the Commissioner and the taxpayer pursuant to section 276 (b) to extend beyond the time prescribed in section 275 the time within which the Commissioner might assess the tax * * * or (B) within three years before * * * the execution of the agreement * * * if * * * the agreement [was] executed within three years from the time the return was filed by the taxpayer * * *

to all assessment waivers and in each case to place Mays' initials immediately under the signature, together with the date of such signing.

Petitioner contends that on December 11, 1946, when Mays mailed Form 872 to petitioner with the name of the taxpayer and the taxable year typed on the form and advised petitioner that an extension of time for filing a protest would be granted "providing the enclosed Form 872 is signed and returned to this office" the Commissioner had consented in writing to an extension of time for making any additional assessment; and that when on December 13 or December 14, 1946, the Form 872 was signed by the president of petitioner on behalf of petitioner and mailed by registered mail to Mays, the Form 872 had been executed by both the Commissioner and the taxpayer pursuant to section 276 (b) [3] and under section 322 (d), *supra*, had been "executed within 3 years from the time the return was filed by the taxpayer."

We hold and find as a fact that the agreement (Form 872) was not "executed" until December 16, 1946, which would be 3 years and 1 day from the time the return was filed. *General Lead Batteries Co., supra.* In *McCarthy Co.* v. *Commissioner*, 80 F. 2d 618, 620, the Circuit Court of Appeals for the Ninth Circuit said "it is settled that 'execution' includes 'delivery.' " In the instant case, it is stipulated that the agreement (Form 872) signed by petitioner was not received in the office of the internal revenue agent in charge until December 16, 1946. Therefore, it was not executed by petitioner within the 3-year period. Furthermore, at the time Mays enclosed Form 872 with his letter dated December 11, 1946, Mays had not signed the Commissioner's name to the waiver, nor affixed his own initials, nor any date. He did all of this on December 16, 1946, after the form had been delivered to him by the taxpayer on that date.

Petitioner's next contention is that even if it be conceded that Form 872 was not "executed" until Monday, December 16, 1946, it should nevertheless be considered as having been timely executed for the reason that the weight of authority is that when the last day prescribed for the performance of any act falls on a Sunday, the performance of such act shall be considered timely if it is performed on the next succeeding day. The cases cited by petitioner, except *United States* v. *Peters*, 220 F. 2d 544 (1955) and *Francis, Jr.* v. *United States*, (S. D., Tex., Nov. 29, 1955) (56–1 U. S. T. C. par. 9163, —A. F. T. R.—) were all considered by us in *General Lead Batteries Co., supra.* The *Peters* and the *Francis* cases are similar to the "pro" cases

---

[3] SEC. 276. SAME—EXCEPTIONS.

(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

cited by us in footnote 2 of our opinion in the *General Lead Batteries* case and after careful and respectful consideration thereof we stand by our decision in the *General Lead Batteries* case. See also *Pleasant Valley Wine Co.*, 14 T. C. 519, where we held that an application for relief under section 722 of the 1939 Code stamped "received" by the Bureau of Internal Revenue at 12 : 40 p. m., on Monday, November 17, 1947, was filed too late where the 3-year period provided for filing expired on Saturday, November 15, 1947, a day on which the Bureau was not officially open. We noted that after our decision in *Sam Satovsky*, 1 B. T. A. 22, Congress changed the law relative to the situation where the last day for filing a petition fell on a Saturday, Sunday, or a legal holiday in the District of Columbia but did not cover a situation in section 322 (b) (1) where the last day of the limitation period therein fixed fell on a Saturday. Congress in enacting the 1954 Code provided in section 7503 thereof that "When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday" but by section 7851 (a) (6) (C) (v) provided that "* * * section 7503 shall apply only if the last date referred to therein occurs after the date of enactment of this title" which was August 16, 1954. Thus it would seem that by not making section 7503 retroactive, Congress recognized that there were situations in the administration of the internal revenue laws where the rule petitioner is now seeking was not intended. Cf. *National Casket Co.*, 16 B. T. A. 1141; G. C. M. 11650, XII–1 C. B. 325.

Finally, petitioner contends that the Commissioner is estopped to deny that there was a timely consent in writing by him to extend the time for making assessments. We see no merit in this contention. Congress has made it mandatory in section 322 (d), *supra*, that before any portion of an overpayment found by this Court can be refunded, the Court must determine "as part of its decision" that, among several prerequisites, such portion was paid within 3 years before the execution of an agreement by both the Commissioner and the taxpayer pursuant to section 276 (b), "if" the agreement was "executed within three years from the time the return was filed by the taxpayer." All that the respondent has done is to see that the necessary facts were before us so that the determination prescribed for by the statute could be made.

We hold that of the overpayment found by this Court for the fiscal year ended September 30, 1943, of the total amount of $22,317.14, only $15,173.90 of that amount is refundable.

*Decision will be entered accordingly.*