DANIEL G. CARY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4835–64.   Filed August 29, 1967.

*Robert R. Veach*, for the petitioner.
*Ronald M. Frykberg*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income taxes for the calendar years 1957 and 1958 in the amounts of $25,985.95 and $10,119.09, respectively.

At the trial the parties stipulated that there was an overpayment in petitioner's income tax for the taxable year 1958 and that a decision might be entered in accordance with that stipulation at the time of entry of decision in this case, and further stipulated that there is a deficiency in income tax due from petitioner for the taxable year 1957 in the amount of $10,240.73 if the assessment and collection of income tax for the taxable year 1957 are not barred by the statute of limitations. In view of these stipulations the sole issue for decision in this case is whether the assessment and collection of an income tax deficiency for the taxable year 1957 are barred by the statute of limitations. Whether the assessment and collection of income tax from petitioner for the calendar year 1957 are barred by the statute of limitations depends upon whether petitioner and respondent executed a valid waiver of the statute for that year prior to the expiration of the 3-year statutory period for assessment provided for in section 6501, I.R.C. 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner, an individual whose legal residence at the time of the filing of the petition in this case was Omaha, Nebr., filed a joint Federal income tax return for the taxable year 1957 with the district director of internal revenue, Omaha, Nebr., on or before April 15, 1958. Petitioner's wife, Cornelia S. Cary, died in 1958 subsequent to the date of the filing of the joint return.

Petitioner, who at the time of the trial of this case was 84 years old, has been engaged in the real estate business in Omaha, Nebr., for over 50 years.

Beginning sometime in 1956 petitioner engaged the firm of certified public accountants, Haskins & Sells, to do his accounting and income tax work. This work was done for petitioner by or under the supervision of Lawrence F. Chandler, hereinafter referred to as Chandler. Chandler is a certified public accountant, being certified in the States

---

[1] All references are to the Internal Revenue Code of 1954.

**756**

of Nebraska, Iowa, and Louisiana. At the time of the trial of this case he had been a certified public accountant with Haskins & Sells for 19 years. He is a member of the American Institute of Certified Public Accountants and also a member and past president of the Nebraska Society of the American Society of Certified Accountants.

Petitioner's joint Federal income tax return for the calendar year 1957 was prepared by Chandler, and when the Internal Revenue Service began an audit of this return, Chandler was representing petitioner in connection with that audit. During the years 1960 and 1961 Chandler had conferences with the examining revenue agent with respect to petitioner's 1957 income tax return.

In the early part of 1961 the examining agent Louis Sefranek, in connection with his investigation of certain of petitioner's income tax returns, discussed with Chandler the execution by petitioner of a consent extending the period of limitations for assessment and collection of income taxes. The revenue agent telephoned Chandler and told him he was sending up to him a consent form which he wanted him to have petitioner sign. Chandler at that time was aware of the fact that petitioner's income tax return for the year 1957 was under audit and that the 3-year statute of limitations for assessment of tax with respect to that year would expire in April 1961. Following the conversations between Chandler and the revenue agent who was examining certain of petitioner's income tax returns, U.S. Treasury Department Form 872 entitled, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," was mailed to Chandler. The body of the form as mailed to Chandler in triplicate was as follows (the portions inserted by typewriter, one ribbon and the others carbon, being indicated by double underscoring and the blank spaces by a single line):

In pursuance of the provisions of existing Internal Revenue Laws, Daniel G. & Cornelia S. Cary a taxpayer (or taxpayers) of 2302 South 90th Street Omaha,
 (Street address)        (City)
Nebraska, and the District Director of Internal Revenue (or Assistant Regional
 (State)
Commissioner-Appellate) hereby consent and agree as follows:

That the amount of any income, excess-profits, or war-profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer (or taxpayers) for the taxable year ended 6-30-62, under existing acts, or under prior revenue acts, may be assessed at any time on or before ————————,
 (Date)
except that if a notice of a deficiency in tax is sent to said taxpayer (or taxpayers) by certified mail or registered mail on or before said date, then the time for making any assessment as aforesaid shall be extended beyond the said date by the number of days during which the making of an assessment is prohibited and for sixty days thereafter.

After receiving the form Chandler reviewed it and noticed that there had been inserted as the year for which the extension was being

granted "6–30–62." Upon receiving the form Chandler called the Internal Revenue Service and asked for the internal revenue agent assigned to the investigation of petitioner's returns and upon being informed that he was out called the supply office of the Internal Revenue Service and asked for blank Forms 872. Chandler was advised that such forms were released only to persons associated with the Treasury Department.

Chandler then called petitioner's attorney and informed him of the contents of the form which had been sent to him and that he intended to send the form as he had received it to petitioner and after explaining to him that it was a meaningless document, suggested that petitioner sign it without change. Petitioner's counsel agreed with that procedure. Chandler then telephoned petitioner and stated to him that he was sending the document which he had received for signature. Chandler further stated to petitioner that the form meant nothing but that since petitioner had been requested to sign it, he should do so and mail it back to Chandler.

Petitioner signed the Form 872 in duplicate with his own name and also in the name of "Estate of Cornelia S. Cary by Daniel G. Cary Administrator," dated the one with the typing in ribbon March 24, 1961, and returned both to Chandler. Petitioner made no change in either the printed or typewritten portions of the Forms 872 before signing the forms and mailing them back to Chandler. After Chandler received the signed Forms 872 from petitioner he wrote in pencil on the top of the one that was dated "Original file copy" and took several pictures of the document. He then placed the Forms 872 with no changes made in either the printed or the typewritten portions in an envelope and mailed them to the Internal Revenue Service on March 28, 1961. On this same date he mailed one of the photostat copies he had made of the Form 872 signed by petitioner and a copy of a Form 56 signed by petitioner to petitioner's attorney with a handwritten note dated March 28, 1961, which read, "Bob: Attached are photostats of the forms signed by Mr. Cary as requested by Lou Safranek. Larry."

On March 31, 1961, the Forms 872 which had been mailed by Chandler to the Internal Revenue Service were signed in the name of the district director of internal revenue by S. B. Comley, Chief, Audit Division, and dated March 31, 1961. When these forms were signed on behalf of the district director of internal revenue, they read as follows (the portions appearing typewritten in ribbon on the form dated, next to petitioner's signature, "March 24, 1961" and in carbon on the other form being indicated by double underscoring) :

In pursuance of the provisions of existing Internal Revenue Laws, Daniel G & Cornelia S. Cary, a taxpayer (or taxpayers) of 2302 South 90th Street Omaha,

(Street address)     (City)

**758**

<u>Nebraska</u>, and the District Director of Internal Revenue (or Assistant Regional
(State)
Commissioner-Appellate) hereby consent and agree as follows:

That the amount of any income, excess-profits, or war-profits taxes due under
any return (or returns) made by or on behalf of the above-named taxpayer
(or taxpayers) for the taxable year ended ~~6-30-62~~ 12–31–57, under existing
acts, or under prior revenue acts, may be assessed at any time on or before
6–30–62, except that if a notice of a deficiency in tax is sent to said taxpayer
(Date)
or taxpayers) by certified mail or registered mail on or before said date, then the
time for making any assessment as aforesaid shall be extended beyond the said
date by the number of days during which the making of an assessment is pro-
hibited and for sixty days thereafter.

(S) DANIEL G. CARY
(Signature) [footnote omitted] (Date)

                                       [SEAL] [footnote
                                          omitted]

(S) ESTATE OF CORNELIA S. CARY
(Signature) [foonote omitted] (Date)
By DANIEL G. CARY ADMINISTRATOR       Mar. 24, 1961
          (Title)             (Date)
    [Name stamped here]
    District Director of Internal Revenue
~~Assistant Regional Commissioner-Appellate~~
By (S) S. B. COMLEY  *CHIEF, AUDIT DIVISION*  Mar. 31, 1961
          (Title)             (Date)

Sometime after the Forms 872 signed by petitioner were received by
the Internal Revenue Service, the following handwritten in ink nota-
tion was made in the margin on the righthand side of the form marked
in pencil at the top, "Original file copy":

"Letters Testamentary" attached to 1955 return authorizes Mr.
Daniel G. Cary to sign for Estate of Cornelia    C.K. 3/31/61.

Under date of March 27, 1961, petitioner executed a U.S. Treasury
Department-Internal Revenue Service Form 56 entitled, "Notice to the
District Director of Internal Revenue of Fiduciary Relationship."
This form was prepared by Chandler and submitted to petitioner for
signature. It stated in part (the typewritten portion being indicated by
double underscoring) :

This notice is given with respect to the liabilities of <u>income tax for</u>
<u>the year ended 12–31–57</u> under the Internal Revenue Code. * * *

Petitioner signed the Form 56 and gave it to Chandler who mailed this
form as executed by petitioner to the Internal Revenue Service on
March 28, 1961.

Both the Forms 872 and the Form 56 bear a stamp reading: "Re-
ceived Mar. 28 1961 Dist. Dir. Int. Rev. Omaha, Nebr. Audit Div."

The Form 872 executed by petitioner but not dated which was mailed by Chandler to the Internal Revenue Service along with the executed and dated Form 872 was returned by the Internal Revenue Service to Chandler signed in the name of the district director of internal revenue by S. B. Comley, Chief, Audit Division under date of March 31, 1961, with the typewritten portions in carbon as they appeared when the form was signed on behalf of the district director of internal revenue. This copy which was returned by the Internal Revenue Service to Chandler was received by Chandler on April 3, 1961. At the time of the receipt of this copy of the Form 872, Chandler looked over the copy and advised petitioner's attorney of its return and of its contents as returned. He then placed this Form 872 in his file.

There is a printed notation on the Forms 872 signed by petitioner to the effect that if the form is executed by a person acting in a fiduciary capacity, such person must submit Form 56, "Notice to the District Director of Internal Revenue of Fiduciary Relationship," together with a certified copy of letters of administration or other listed documents showing the right of the person to act as fiduciary. In the Form 56 signed by petitioner and submitted to the Internal Revenue Service on March 28, 1961, the statement was that letters testamentary were now on file with the district director of internal revenue.

A U.S. Treasury Form 872, "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax" for the taxable year 1957 was executed by petitioner on April 18, 1962, and was executed on behalf of the district director of internal revenue on May 23, 1962. A similar form for the taxable year 1957 was executed by petitioner on April 16, 1963, and by the district director of internal revenue on June 10, 1963.

The first of these Forms 872 stated that any income tax for the year might be assessed at any time before June 30, 1963, and the second stated that such tax might be assessed at any time before June 30, 1964.

The statutory notice of deficiency reflecting respondent's determination of a deficiency in petitioner's income tax for the taxable year 1957 was mailed to petitioner on June 26, 1964.

At no time during the year 1961 did petitioner or Chandler or petitioner's attorney state orally or in writing any objections to the validity or effectiveness of the Form 872 which was mailed to Chandler, signed by petitioner on March 24, 1961, and returned to the Internal Revenue Service. Chandler had no discussions during 1961 with representatives of the Internal Revenue Service with respect to the Form 872 after that form was received by him from the Internal Revenue Service. The form mailed to Chandler was not accompanied by a transmittal letter, Chandler returned the signed form without a transmittal letter, and the executed copy of the form received by

760

Chandler from the Internal Revenue Service on April 3, 1961, was not accompanied by a transmittal letter.

Petitioner in his petition alleged that the assessment of a deficiency for the taxable year 1957 was barred by the statute of limitations. Respondent in his answer to the petition affirmatively alleged as one of his defenses to petitioner's claim of the bar of the statute to the assessment of a deficiency in income tax for the taxable year 1957 that "Consents were executed by petitioner on March 24, 1961, April 18, 1962 and April 16, 1963 and accepted by the respondent on March 31, 1961, May 23, 1962 and June 10, 1963 extending the period within which an assessment for the taxable year 1957 could be made to June 30, 1964."

OPINION

Both parties recognize that since the notice of deficiency for petitioner's taxable year 1957 was mailed more than 3 years after petitioner's return for that year was filed, assessment and collection of a deficiency for that year are barred by section 6501(a) unless the Form 872 signed by petitioner on March 24, 1961, is a valid extension of the statute of limitations. Section 6501(c)(4) [2] provides that the taxpayer and the Secretary or his delegate may consent in writing before the expiration of the period provided by statute for assessment and collection of income tax to an extension of that period and that further extensions may be made by subsequent written agreements entered into before the expiration of the period previously agreed upon. Under this statute, the Forms 872 executed by petitioner in 1962 and 1963 are ineffective if the Form 872 executed by petitioner on March 24, 1961, was not an effective consent to an extension of the statute of limitations for the taxable year 1957.

The narrow question here, therefore, is whether the Form 872 executed by petitioner on March 24, 1961, and on behalf of the district director of internal revenue on March 31, 1961, is effective to extend the period for the assessment and collection of income tax against petitioner for the calendar year 1957 to June 30, 1962.

It is petitioner's position that he executed no document providing for the extension of the statute of limitations for the taxable year 1957 since the document he signed and returned to the Internal Revenue

---

[2] SEC. 6501. [I.R.C. 1954.] LIMITATIONS ON ASSESSMENT AND COLLECTION.

(c) EXCEPTIONS.—

   *     *     *     *     *     *     *

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Service stated that "the amount of any income tax * * * due under any return (or returns) made by [him] * * * for the taxable year ended 6–30–62 * * * may be assessed at any time on or before _____." It is petitioner's position that respondent cannot claim to have been misled by the document which he signed and returned to the Internal Revenue Service since someone in respondent's employ changed the document after it was signed by petitioner by striking out the "6–30–62" as the year for which the extension was given and putting in its stead "12–31–57" and by inserting in the blank for the date to which the statute was extended the figures "6–30–62." Petitioner in his brief states with respect to the change in the form after it had been received in the Internal Revenue Service:

Whether such action be referred to as forgery, which it constitutes by definition,[1] or merely as an alteration by some misguided person in the Revenue office, the conclusion remains that such alteration is not binding upon the Petitioner. [Footnote omitted.]

Respondent contends that the "correction of a date and the filling in of a blank" on the consent after it was signed by petitioner on March 24, 1961, and before it was signed on behalf of the district director of internal revenue on March 31, 1961, were pursuant to authorization impliedly given by or on behalf of petitioner and in accordance with the true intent of the parties to extend the period of limitation for assessment of the tax for the taxable year 1957. Respondent further contends that the changes in the document were approved, adopted, and ratified on behalf of petitioner when Chandler, who was petitioner's accountant and represented him in income tax matters before the Internal Revenue Service, received a copy of the Form 872 containing these changes and made no objection to the changes. If there was implied consent by petitioner to the changes in the Form 872, it must arise solely from the fact that at the time the Form 872 was signed, petitioner's income tax liability for the calendar year 1957 was under investigation and the statute of limitations for assessment and collection of a deficiency in tax for that year would expire on April 15, 1961. The evidence shows that neither petitioner, Chandler, nor petitioner's attorney had any discussion during 1961 with respect to the Form 872 with representatives of the Internal Revenue Service after the Form 872 was mailed by the Internal Revenue Service to Chandler. Certainly "implied consent" to a change in a written document cannot be gleaned from a conversation between a revenue agent and a representative of a taxpayer regarding the mailing by the former to the latter of a form for the signature of the taxpayer. "Implied consent" to a change in a form cannot be found to exist because a taxpayer signs a form which obviously has an incorrect assertion in a blank space without himself correcting the form. In order to find an implied consent to alteration in a written agreement,

the implication must be plain and unambiguous. *United States* v. *Reinking*, 172 F. Supp. 131, 140 (W.D. Mo. 1958). Respondent's argument with respect to "implied consent" is in substance an argument that petitioner gave "implied consent" to the extension of the statute of limitations for assessment of income tax for the calendar year 1957 and not that petitioner gave "implied consent" to the change in the Form 872. However, in order to be effective, petitioner's consent to such an extension of the statute must be in writing. Any consent by petitioner or his agent to the extension of the statute whether stated or implied which is not in writing is not a valid waiver of the statute under section 6501(c)(4).

Respondent in his argument relies on cases such as *Mulford* v. *Commissioner*, 66 F. 2d 296 (C.A. 3, 1933), affirming 25 B.T.A. 238 (1932), in which it was held that a waiver which referred to no year was an effective waiver of the statute for the year 1917. In that case the waiver was given at a time when the only contested tax matter between the taxpayer and the Commissioner was the year 1917 and the other evidence of record in that case indicated that both the taxpayer and the Commissioner had in mind the year 1917 when the waiver was executed.

The waiver in the instant case as signed by petitioner did not omit the year for which it was given. Petitioner states that in the instant case if respondent's employee had merely filled in a blank this action might not be considered strictly an alteration, but that the evidence showed that he struck out a date which was in the form as signed by petitioner and inserted a different date thus clearly altering the instrument. Respondent in no way requested petitioner's permission to make this change or petitioner's agreement to the change after it was made. Petitioner takes the position that since it is clear that a representative of respondent noticed that the Form 872 was not for the year 1957 prior to the running of the statute of limitations for that year, respondent had ample opportunity to obtain petitioner's expressed consent to the change but did not do so.

Respondent further argues, based on such cases as *United States* v. *Vassallo, Inc.*, 274 F. 2d 791 (C.A. 3, 1960), and *Crown Willamette Paper Co.* v. *McLaughlin*, 81 F. 2d 365 (C.A. 9, 1936), that a defective waiver may be ratified by the subsequent actions of a taxpayer. These cases deal with the authority of the individual signing the waiver on behalf of the taxpayer and not with the question of alterations in a document. Respondent also argues that since petitioner made no objection to the Form 872 as altered after Chandler had knowledge of the changes until such time as it became necessary to enforce the instrument, such lack of action may be viewed as an acquiescence which constitutes a ratification of the changed instrument. Respondent states

that petitioner permitted action to be taken with reference to the Form 872 which implied a recognition by him of the validity of the instrument when he signed further waivers for the year 1957. Respondent argues that since a deficiency notice could have been mailed to petitioner prior to the expiration of the statute of limitations at the time the Form 872 as altered was returned to Chandler, petitioner's action in not objecting to the alteration imports the recognition by petitioner of the Form 872 as valid or estops petitioner from denying its validity. Respondent cites in support of this argument *Stearns Co.* v. *United States*, 291 U.S. 54 (1934) ; *Concrete Engineering Co.* v. *Commissioner*, 58 F. 2d 566 (C.A. 8, 1932), affirming an order of this Court dated July 23, 1931; *Jaffee* v. *Commissioner*, 45 F. 2d 679 (C.A. 2, 1930), affirming 17 B.T.A. 675 (1929), certiorari denied 283 U.S. 853; and *Ralston Purina Co.* v. *United States*, 58 F. 2d 1065 (Ct. Cl. 1932). In *Stearns Co.* v. *United States, supra,* the taxpayer, after receipt of notice and demand for a deficiency in tax for 1917 prior to the expiration of the statute of limitations for collection of such tax, had requested that collection be by way of a credit from a proposed overpayment for the year 1918. The credit was made after the expiration of the statute for collection of the tax for 1917. The Court held that the taxpayer was estopped by his actions from relying on the expiration of the statute for collection when the credit was made. *Concrete Engineering Co.* v. *Commissioner, supra,* involved the authority of a secretary-treasurer of a corporation to sign a waiver, and *Ralston Purina Co.* v. *United States, supra,* like the *Stearns* case, involved a request to stay collection and offset the amount due against a claimed overpayment for another year. The *Jaffee* case involved the authority of a corporate officer to sign a waiver. None of these cases is comparable to the instant case.

Generally an agreement by a taxpayer and the Commissioner to an extension of the statute of limitations is to enable the respondent to more carefully investigate some phases of the taxpayer's tax liability and the allowance of additional time should be in the best interests of both parties. A waiver proper on its face, relied on by the Commissioner, cannot be later repudiated by the taxpayer. As stated in *Liberty Baking Co.* v. *Heiner,* 37 F. 2d 703, 704 (C.A. 3, 1930), affirming 6 B.T.A. 1270 (1927), "The statute requires nothing but 'consent,' and it would be unconscionable to allow the taxpayer to afterwards repudiate a consent upon which the Commissioner has acted and relied." However, the "consent" required by the statute must be written. We have held that in order to be effective the waiver must be signed before the expiration of the statutory period for assessment by both the taxpayer and the Commissioner. *General Lead Batteries Co.,* 20 T.C. 685 (1953). We recognized that the waiver is "not a contract in the true sense" but

considered the language requiring both signatures to be unambiguous. In *Holbrook* v. *United States*, 284 F. 2d 747 (C.A. 9, 1960), the Court held that the requirement of the Commissioner's signature was directory and not mandatory discussing numerous cases some reaching an opposite conclusion. In *Holbrook* v. *United States, supra* at 750, the Court stated with reference to *Commissioner* v. *United States Ref. Corp.*, 64 F. 2d 69 (C.A. 3, 1933), affirming 23 B.T.A. 872, affirmed per curiam 290 U.S. 591:

> The court conceded that a waiver even when signed by both taxpayer and Commissioner did not constitute a contract between them. Even so, the requirement that the Commissioner consent in writing was made for some purpose. This purpose, said the court, might well be to prove that the terms of a waiver are those to which both taxpayer and Commissioner agreed. Or perhaps Congress may have wished to protect the Commissioner from falling prey unknowingly to the terms which a taxpayer might impose in a waiver, the taxpayer's ability to impose such terms arising from the fact that, in the court's eyes, he could force the Commissioner to bargain for an extension of the limitation period. The Commissioner's consent thus prevents the execution by taxpayers of waivers which waive nothing and precludes the combination of the Commissioner's delay in collection and his ignorance of the terms of a waiver from resulting in the loss of the tax to the government. On these grounds and despite its awareness of our decision in Hind, the court held that a waiver without the Commissioner's written agreement is void and ineffective.

The waiver in the instant case as signed by petitioner was not the same document as signed by respondent. There had been the changes we have noted made in the document. It is petitioner's position that the situation in this respect is comparable to a waiver not signed by the Commissioner even if by some form of "implication" petitioner could be held to have signed a waiver extending the statute as to the taxable year 1957.

The only two income tax cases to which our attention has been directed which involve questions of alterations of instruments are *F. A. Gillespie*, 20 B.T.A. 1068 (1930), and *E. M. Pringle Naval Stores Co.*, 23 B.T.A. 1328 (1931). The issue in the *Gillespie* case was whether the alteration on the document had been made by the taxpayer before the document was signed and forwarded to the Internal Revenue Service or whether the alteration was made after the document was received by the Internal Revenue Service. On the basis of the facts there present, we concluded that the alteration had been made by petitioner prior to signing the waiver and forwarding it to the Internal Revenue Service. The alteration there involved was a change of a printed date "December 31, 1926" by striking out the figure "6" and inserting in ink the figure "7." In our discussion of the issue we stated at page 1084:

> If the alteration was made before the instrument was signed by the petitioner it is undoubtedly good for the purpose claimed by the respondent; if altered after

petitioner's signature was affixed it does not extend the time beyond December 31, 1926, and the notice of deficiency was mailed too late.

The other case in which the question of an altered document was raised was *E. M. Pringle Naval Stores Co.*, *supra*, which involved a change made by the accountant for the taxpayer after the document was signed by the taxpayer but before it was submitted to the Internal Revenue Service. After making the change in the document the accountant as "attorney" signed the taxpayer's name thereto. There was no question in that case of an alteration made by any person in the Internal Revenue Service. In that case we held that the accountant who was representing the taxpayer before the Treasury Department under a broad power of attorney had authority under that power of attorney to sign a waiver on behalf of the taxpayer and therefore had the authority to alter such a waiver on behalf of the taxpayer before it was submitted to the Internal Revenue Service. Neither of these cases is factually similar to the instant case.

Here the facts show that petitioner on the advice of his accountant concurred in by his attorney deliberately sent a document to the Internal Revenue Service which he and his representatives knew contained an error which he and his representatives considered material. Neither petitioner nor his representatives directed the attention of the Internal Revenue Service to the error in the instrument. Had no change been made in the instrument in the Internal Revenue Service, these facts might justify the conclusion that petitioner was estopped to deny that the document he submitted to the Internal Revenue Service was an extension of the statute of limitations on assessment for the year 1957 because of petitioner's misleading the respondent to respondent's detriment. However under the facts of the present case we are not required to decide such an issue. It is clear from the evidence here that the error in the Form 872 was not overlooked by respondent. Not only was the error noticed but the instrument was changed by respondent's employee after petitioner had signed the instrument without any consultation with petitioner or his representatives in an attempt to obtain their agreement to the change or a new instrument with the right date inserted in the appropriate blank space. The Form 872 was apparently signed by representatives of the Commissioner authorized to sign the name of the district director of internal revenue to such a document with figures struck out and others inserted without inquiry as to whether the alteration was made prior to signature by petitioner, or if made after petitioner's signature had been called to the attention of petitioner or his representatives. At the time this document was altered in the Internal Revenue Service and signed on behalf of the Commissioner, there still remained at least 15 days to obtain a proper Form

872 extending the statute of limitations on assessment for the year 1957.

Under these circumstances it can hardly be said that the Commissioner was misled by petitioner. In this case respondent is relying on a document which was altered by his agents or employees without the consent of petitioner. No notice of the alteration was given to petitioner other than the sending of a copy of the altered document to petitioner's representative. Such notice cannot be considered the equivalent of obtaining petitioner's consent to the alteration. We recognize that since neither petitioner nor his representatives discussed with representatives of respondent the change made in the Form 872 in respondent's office, petitioner was in a position to contend after respondent determined a deficiency that the form was not a valid waiver of the statute of limitations but in the event of an overpayment in his tax for the taxable year 1957, to contend that the form was a valid waiver. Cf. *Glenshaw Glass Company, Inc.*, 25 T.C. 1178 (1956). We, nevertheless, cannot overlook the fact that the evidence shows and respondent does not deny that the alteration in the Form 872 as signed by petitioner was made in respondent's office. Not only was petitioner's attention never specifically directed to the alteration but at the trial no person from respondent's office was called to testify about the making of the change. Except for the fact that petitioner's accountant kept a copy of the Form 872 as it was when forwarded to the Internal Revenue Service and sent a copy of the form as it then appeared to petitioner's attorney, we would find it difficult to believe that the alteration in the Form 872 was made by a government employee without the consent of petitioner after the waiver had been signed by petitioner. See *F. A. Gillespie, supra* at 1087. The same physical document, a Form 872, was signed by the petitioner and on behalf of the respondent but the document as signed by petitioner had been changed before being signed on behalf of the respondent. Such a document did not constitute a consent in writing by both the taxpayer and the Commissioner.

The question here is not whether the action of the participants who created the present factual situation is commendable. The question is whether at the time of the mailing of the notice of deficiency in this case the statute of limitations on assessment and collection of income tax for petitioner's taxable year 1957 had expired. We hold under the facts here present that assessment and collection of the deficiency in tax for the year 1957 are barred by the statute of limitations.

> *Decision will be entered for petitioner as to the year 1957.*
>
> *Decision will be entered in accordance with the stipulation of the parties for the year 1958.*