*Decisions will be entered under Rule 155.*

EDMUND DuPONT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3900–79. Filed June 3, 1980.

*Wilbert H. Sirota* and *Robert B. Curran,* for the petitioner.
*John F. Dean,* for the respondent.

OPINION

DRENNEN, *Judge:* This case is presently before the Court on petitioner's motion for judgment on the pleadings on the grounds that respondent's answer shows that petitioner is entitled to judgment as a matter of law. Rule 120, Tax Court Rules of Practice and Procedure.

For each of the years 1973, 1974, and 1975, respondent determined a section 4941(a)(1), I.R.C. 1954,[1] excise tax deficiency in the amount of $1,250 as a result of the further determination that petitioner had engaged in an act of self-dealing in July 1973 which act remained uncorrected until December 1975. Petitioner filed a petition contesting respondent's determinations, in response to which respondent filed an answer. The parties have also submitted memoranda of law in support of their respective positions with regard to the motion.

In the statutory notice of deficiency, mailed February 5, 1979, respondent provided the following explanation for the determination that section 4941(a)(1) excise taxes were due for each of the years 1973, 1974, and 1975:

The sale of a tract of land by you to the Bailey's Neck Park Association in November 1971, was identified as an act of self-dealing. In order to avoid the first and second tier penalties of Section 4941 of the Code, you rescinded the above sale in July 1973. As a result of the rescission in July 1973, no penalties were asserted.

Immediately after the rescission in July 1973, you sold the same tract of land to Mr. Thompson who immediately sold it to the Bailey's Neck Park Association. This second sale of a tract of land to the Association in July 1973 was again identified as an act of self-dealing, and in December 1975, the land was deeded back to Mr. Thompson. As a result of the corrective action taken in December 1975, the second tier penalty of Section 4941 was not applied.

It is determined, however, that, as a result of the act of self-dealing that occurred in July 1973, which was not corrected until December 1975, the first

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, unless otherwise noted.

tier penalty as provided by Section 4941(a)(1) is applicable in the amount of $1,250.00 for each of the years 1973, 1974, and 1975.

In his petition to this Court, petitioner alleged that the respondent's determination was erroneous for the following reasons:

(i) The series of transaction[s] which took place in 1973, whereby the subject property was successively conveyed by the * * * [Bailey's Neck Park Association] to Petitioner, to a "straw man," and back to * * * [Bailey's Neck Park Association], was entirely without substance and a "sham." Therefore, the transaction should be disregarded for tax purposes; and, the relevant transaction, which occurred in 1971, is not subject to scrutiny at this time, due to the operation of Section 6501 of the Code.

(ii) The * * * [respondent] should be estopped from assessing any deficiency in view of the fact that Petitioner relied to his detriment upon representations made by the Commissioner's agent to the effect that the transactions consummated in 1973 would not involve any act of self-dealing.

Respondent generally denied each of the errors alleged by petitioner. Respondent admitted some of the facts alleged in the petition, such as the transactions set out below, and denied other allegations.

The facts of this case, as contained in the undenied allegations of fact in the pleadings, are as follows.

Edmund DuPont (hereinafter petitioner), an individual, resided in Delaware when he filed his petition herein.

On December 15, 1965, the Bailey's Neck Park Association (hereinafter the association) was formed. On February 28, 1966, the association received a determination from the Baltimore District Office, Internal Revenue Service, to the effect that it qualified as a charitable organization under section 501(c)(3). On October 20, 1970, the association was classified as a private foundation within the meaning of section 509(a).

On April 18, 1966, petitioner contributed 16 acres of land, located in Talbot County, Md., to the association. On November 10, 1971, petitioner, having previously paid $27,500 for the parcel, sold 51 additional acres of real estate to the association for the purchase price of $25,000.

For the year 1971, the association filed a Form 990, Return of Organization Exempt from Income Tax, on April 3, 1972, with the Director, Internal Revenue Service, Philadelphia, Pa.

In June 1973, an agent of respondent advised the association that in order to avoid penalties under the Internal Revenue Code for an act of self-dealing between the association and a

"substantial contributor," i.e., petitioner, the 1971 transfer of the 51 acres of real estate would have to be reversed.

On or about July 16, 1973, the association sold the 51-acre tract back to petitioner for $25,000. Petitioner immediately transferred the property to Ernest M. Thompson (hereinafter Thompson), an individual, for the price of $25,000. Immediately thereafter Thompson sold the property to the association for $25,000. The effect of this series of steps was to put the parties in precisely the same positions they occupied prior to the "reversal" of the 1971 transfer.

In December 1975, the 51-acre tract was transferred by the association to Thompson for the purchase price of $25,000. No information was provided as to the disposition of the tract after this December 1975 transfer.[2]

Section 4941(a)(1) provides in pertinent part:

There is hereby imposed a tax on each act of self-dealing between a disqualified person and a private foundation. The rate of tax shall be equal to 5 percent of the amount involved with respect to the act of self-dealing for each year (or part thereof) in the taxable period. The tax imposed by this paragraph shall be paid by any disqualified person * * * who participates in the act of self-dealing. * * * [3]

---

[2]The petition alleged additional facts which were denied by respondent in his answer and must be considered as false for purposes of this motion. 5 C. Wright & A. Miller, Federal Practice and Procedure, Civil, sec. 1368, pp. 689–697 (1969). Included among such allegations was the fact that on June 22, 1973, in order to comply with the direction of respondent's agent respecting reversal of the 1971 transaction, an officer of the association contacted respondent's agent by telephone and requested his advice as to whether the "transaction could be corrected by reversing the transaction, and then by restructuring the transfer through the use of a 'straw man,' who would not be a 'disqualified person' with respect to the Association." The agent advised *"the taxpayer"* that the restructuring of the transaction in the manner proposed would be a satisfactory solution to the problem. Also, that in accordance with the agent's advice the various transactions described above took place—"all in accordance with the advice of the agent who had insisted on the reversal in the first instance." The petition also alleged, and respondent denied, that the December 1975 transfer of the property by the association to Thompson "was the result of further instructions received from the Baltimore District Office" of respondent.

[3]The terms "taxable period," "amount involved," and "correction" are defined in sec. 4941(e):

(e) OTHER DEFINITIONS.—For purposes of this section—

(1) TAXABLE PERIOD.—The term "taxable period" means, with respect to any act of self-dealing, the period beginning with the date on which the act of self-dealing occurs and ending on whichever of the following is the earlier: (A) the date of mailing of a notice of deficiency with respect to the tax imposed by subsection (a)(1) under section 6212, or (B) the date on which correction of the act of self-dealing is completed.

(2) AMOUNT INVOLVED.—The term "amount involved" means, with respect to any act of self-dealing, the greater of the amount of money and the fair market value of the other property given or the amount of money and the fair market value of the other property received; except that, in the case of services described in subsection (d)(2)(E), the amount

Included within the statutory definition of self-dealing is "any direct or indirect" sale or exchange or property between a private foundation and a disqualified person. Sec. 4941(d)(1)(A). A "disqualified person" for purposes of section 4941 includes a person who is a substantial contributor to a private foundation. Sec. 4946(a)(1)(A). A substantial contributor includes:

> any person who contributed or bequeathed an aggregate amount of more than $5,000 to the private foundation, if such amount is more than 2 percent of the total contributions and bequests received by the foundation before the close of the taxable year of the foundation in which the contribution or bequest is received by the foundation from such person. * * *

Sections 507(d)(2), 4946(a)(2).

Respondent determined that (1) petitioner was a disqualified person or a substantial contributor in 1973 with respect to the association and (2) that the association was a private foundation. Petitioner has not disputed either of these determinations and we will accept them as fact for purposes of this proceeding. Neither party has addressed the question whether the utilization of Thompson in the structuring of the July 1973 transaction precludes the transaction from being an act of self-dealing and we will not consider it here.

For purposes of this motion, the parties have framed the issue in terms of what effect for tax purposes is to be given to the series of transfers in July 1973 between petitioner, the association, and Thompson. In essence, the question is whether the initial transfer of the parcel of real estate from the association back to petitioner was separable from the immediately subsequent retransfer of the parcel from petitioner back to the association through Thompson, so that the initial transfer was a "correction" of the 1971 sale of the property and the subsequent retransfer was another act of self-dealing.

---

involved shall be only the excess compensation, for purposes of the preceding sentence, the fair market value—

(A) in the case of the taxes imposed by subsection (a), shall be determined as of the date on which the act of self-dealing occurs; and

(B) in the case of the taxes imposed by subsection (b), shall be the highest fair market value during the correction period.

(3) CORRECTION.—The terms "correction" and "correct" mean, with respect to any act of self-dealing, undoing the transaction to the extent possible, but in any case placing the private foundation in a financial position not worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards.

Petitioner's motion for judgment on the pleadings is premised on two points: (1) That the series of transfers in July 1973 by which the 51-acre tract was transferred full circle between the association, petitioner, Thompson, and the association had no substance and should be ignored for Federal tax purposes; and (2) even if the 1971 sale of the same tract by petitioner to the association was an act of self-dealing, the section 4941(a)(1) excise taxes imposed on that act for 1973, 1974, and 1975 are barred by the statute of limitations as prescribed in section 6501.[4] The heart of petitioner's contention is that no act of self-dealing took place in July 1973 because, in effect, nothing took place at all since petitioner, Thompson, and the association were in exactly the same positions after the series of transfers as before them.

Respondent argues that the form of the July 1973 transaction cannot be disregarded solely because petitioner, the association, and Thompson were in exactly the same positions after the transaction as before it. The absence of any change of positions, according to respondent, is not a factual circumstance which has been used by courts in determining that the form of the transaction selected by the taxpayer is not controlling for tax purposes. This, respondent asserts, should be especially true in a case involving a section 4941(a)(1) excise tax, which tax imposes a type of strict liability on disqualified persons for acts of self-dealing with private foundations.

In addition, respondent contends that petitioner is estopped from denying that the July 1973 transfers encompassed both a correction of the 1971 act of self-dealing and a second, separate act of self-dealing since petitioner intended respondent to rely, to respondent's detriment, on the 1973 transfer from the association to petitioner as a correction of the 1971 sale of the parcel of real estate.[5]

Prior to a discussion of the merits of petitioner's motion, a question which needs to be considered is whether the issue presented by the motion can properly be decided under Rule 120,

---

[4] In neither his motion for judgment nor in his memoranda in support of his motion does petitioner make any mention of the allegation contained in his petition that respondent is estopped from assessing any deficiency due to petitioner's reliance on the advice of respondent's agent, and we will not consider that allegation in this proceeding.

[5] For reasons hereinafter stated, we have not considered this argument at this time.

Tax Court Rules of Practice and Procedure. Both parties, apparently assuming that the motion is proper under the circumstances presented, fail to address this point.

The granting of a motion under Rule 120 is proper only where the pleadings do not raise a genuine issue as to a material fact and the moving party is entitled to a decision as a matter of law. *Anthony v. Commissioner*, 66 T.C. 367 (1976); *Shaheen v. Commissioner*, 62 T.C. 359 (1974).[6]

With respect to the narrow question of whether the July 1973 series of transactions should be recognized or ignored for purposes of this case, we do not believe there is any dispute as to any material fact and that we can determine whether petitioner is entitled to judgment as a matter of law.

Petitioner's primary argument is that because, after the July 1973 transactions, petitioner, Thompson, and the association were in precisely the same positions they occupied prior to the 1973 transactions, the 1973 transactions had no substance and were sham transactions which should be ignored for tax purposes. We disagree. We believe the transfer of the 51-acre tract from the association to petitioner in July of 1973 was specifically intended to, and did, correct the act of self-dealing which petitioner perpetrated in 1971, that the substance of that transaction was the same as its form, and that that transaction must be considered separate and apart from the remainder of the 1973 transactions. The second part of the 1973 transactions, the retransfer of the property by petitioner to the association through Thompson, was petitioner's own idea of a means of accomplishing the same end result as the 1971 transaction but in a manner he hoped would avoid the tax imposed by section 4941(a). The fact that the parties were in precisely the same positions after the 1973 transactions as they were in prior thereto does not mean that the individual steps taken had no substance and were shams. If so, why did petitioner go through the procedure? Unlike the petitioner in *Gregory v. Helvering*, 293 U.S. 465 (1935), each step in the 1973 transactions was taken to accomplish an independent purpose which was advantageous to

---

[6]See also Note, Rule 120(a), Tax Court Rules of Practice and Procedure, 60 T.C. 1125. See generally 5 C. Wright & A. Miller, Federal Practice and Procedure, Civil, sec. 1368, pp. 689–697 (1969), for a discussion of Rule 12(c), Federal Rules of Civil Procedure, from which Rule 120, Tax Court Rules of Practice and Procedure, was derived.

petitioner, rather than a series of steps which had no independent significance themselves other than to arrive at an end result favorable to petitioner, as happened in *Gregory v. Helvering, supra.*

The allegations in the petition, although not all agreed to by respondent, lend support to our analysis. Petitioner alleged that a revenue agent advised him that the 1971 transaction was considered to be an act of self-dealing and would have to be reversed to avoid the penalty tax.[7] He further alleges that in order to comply, he contacted the revenue agent by telephone and asked his advice as to whether the 1971 transaction could be corrected by reversing the transaction *and then* by restructuring the transfer through the use of a "straw man," who would not be a "disqualified person." This, we believe, has all the connotations of two separate and independent transactions, each to accomplish a different purpose. The above is exactly what took place and the substance of the transactions cannot now be withdrawn, and the whole series of transactions collapsed to nothing, simply because it would be advantageous to petitioner to do so.

We conclude that on the facts before us which are not in dispute, the transfer of the 51-acre tract from the association to petitioner in 1973 must be given independent significance as correcting the act of self-dealing in 1971. The second series of transactions by which the property was retransferred from petitioner to the association must also be given independent significance and may or may not have constituted an act of self-dealing under the statute, a question we are not asked to pass on at this time. Consequently, we cannot conclude as a matter of law that petitioner is not liable for the tax imposed by section 4941(a) as a result of the transaction in 1973, and we must,

---

[7]While the statute does not appear to provide any exceptions to imposition of the first-tier tax with respect to acts of self-dealing, sec. 53.4941(f)-2, Foundation Excise Tax Regs., did establish a special transitional rule that in case of an act of self-dealing engaged in prior to July 5, 1971, sec. 4941(a)(1) shall not apply if certain other conditions are met and the act is corrected by July 15, 1973. This is mentioned to explain why respondent did not impose the first-tier tax on the 1971 transaction despite the correction. Petitioner was careful to allege that the Nov. 10, 1971, transaction was consummated pursuant to an agreement entered into in June 1971, and that the transfer of the property from the association back to petitioner occurred on or about July 16, 1973. It seems obvious that the primary function of the 1973 transactions was to take advantage of this regulation to correct the act of self-dealing in 1971.

therefore, deny petitioner's motion for judgment on the pleadings.

We are also reluctant to grant a motion for judgment on the pleadings because to do so would necessarily deny respondent the opportunity to raise the estoppel issue mentioned above. Rule 39, Tax Court Rules of Practice and Procedure, clearly provides that the defense of estoppel must be raised in the pleadings. In this case, amendment of the pleadings is within the discretion of the Court. Rule 41, Tax Court Rules of Practice and Procedure.[8] While we are doubtful that respondent will see a need to formally raise the issue of estoppel in light of this opinion, we do not want to foreclose to respondent a legal theory in support of the determined deficiency in excise taxes at this stage of the proceedings. Accordingly, respondent is hereby granted leave to amend his answer to include the defense of estoppel if he so desires.

Furthermore, if either petitioner's estoppel issue raised in his petition or respondent's estoppel issue aforesaid is to be decided by this Court, additional facts would have to be developed which cannot be done in a proceeding for judgment on the pleadings. Whether respondent's agent advised petitioner or the association that the tax could be avoided by petitioner's transferring the property to a "straw man," and whether respondent knew in 1973 that petitioner had retransferred the property to the association through a "straw man," are two that come to mind. We assume there might be some dispute about those facts. In any event, we believe the parties should have the opportunity to develop these facts at a trial if they so desire.

> *Petitioner's motion for judgment on the pleadings is denied.*

---

[8] In his memorandum in reply to respondent's memorandum, petitioner objected to this Court's consideration of respondent's estoppel argument.