CENTURY DATA SYSTEMS, INC., THROUGH CALIFORNIA COMPUTER PRODUCTS, INC., SUCCESSOR IN LIQUIDATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2682-84.    Filed February 11, 1986.

*James G. Phillipp* and *Stephen L. Tolles*, for the petitioner.

*Michael C. Cohen*, for the respondent.

## OPINION

NIMS, *Judge*: This matter is before the Court on petitioner's motion for judgment on the pleadings pursuant to Rule 120.[1] Respondent has submitted, and we have accepted, matters outside the pleadings. We therefore treat petitioner's motion as one for summary judgment pursuant to Rule 121.[2]

Respondent determined deficiencies in petitioner's Federal income tax as follows:

| Year ended | Deficiency |
| --- | --- |
| Dec. 31, 1970 | $3,291,164.56 |
| Dec. 31, 1971 | 3,717,512.59 |
| Apr. 3, 1972 | 299,377.80 |

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 in effect for the years in question.

[2] Rule 120(b).

The sole issue remaining before the Court is whether petitioner is estopped from raising the statute of limitations as a defense to the determined deficiencies.[3]

For purposes of this motion, all of respondent's factual allegations are deemed admitted. See *DuPont v. Commissioner*, 74 T.C. 498, 501 n. 2 (1980). The following is a summary of those facts revealed by the pleadings and relevant to the inquiry before us.

Petitioner Century Data Systems, Inc. (CDS, hereinafter sometimes petitioner) through California Computer Products, Inc. (Cal Comp), had its principal place of business in Anaheim, California, at the time of filing the petition herein. On or about December 12, 1974, CDS was liquidated, and all of its assets were transferred to and all of its liabilities were assumed by Cal Comp. As such, Cal Comp is joined as a petitioner solely by reason of its status as successor in liquidation to CDS.

Petitioner was incorporated on July 30, 1968, and at all times relevant herein maintained and closed its books on a calendar year annual accounting period. CDS timely filed its Federal income tax returns for the periods ended December 31, 1968, and December 31, 1969, on a separate return, calendar year basis.

On or before March 15, 1971, CDS filed a Federal income tax return reporting its income and deductions on a separate return basis for the 6-month period ended June 30, 1970. Attached to the return was a written statement advising the IRS that such short period return was filed in accordance with section 1.1502-76(c)(2), Income Tax Regs.[4] (relating to separate returns of corporations subsequently to be included on a consolidated return). The balance of petitioner's income and deductions for the remaining 6 months of 1970 and the first 6 months of 1971 were reported and included in Cal Comp's initial consolidated

---

[3]Respondent has conceded two other issues raised in his answer and addressed by petitioner's motion, to wit: whether the statute of limitations is held open by petitioner's failure to file an appropriate tax return; and whether the statute of limitations has been tolled by the issuance of a prior deficiency notice.

[4]Sec. 1.1502-76(c)(2), Income Tax Regs., reads in pertinent part as follows: "If the group has not filed a consolidated return on or before the due date for the filing of a subsidiary corporation's separate return * * * then on or before such due date such subsidiary shall file a separate return either for the portion of its taxable year for which its income would not be included in a consolidated return if such a return were filed, or for its complete taxable year."

return for the fiscal year ended June 30, 1971. Petitioner also joined in the consolidated return of Cal Comp for the fiscal year ended June 30, 1972.

From the date of its incorporation, September 17, 1958, through June 30, 1970, Cal Comp filed separate Federal income tax returns on the basis of a fiscal year ended June 30. On or about December 20, 1971, Cal Comp filed its first consolidated Federal income tax return, reporting the income and deductions of Cal Comp, CDS and Cal Comp's five wholly owned U.S. subsidiaries for the fiscal year ended June 30, 1971. Included in this return were schedules which set forth the income, deductions, and credit of CDS for the fiscal year ended June 30, 1971.

On or about March 16, 1973, Cal Comp filed a consolidated Federal income tax return, reporting the income and deductions of Cal Comp, CDS and Cal Comp's six wholly owned U.S. subsidiaries for the fiscal year ended June 30, 1972. Included in this return were schedules which set forth the income, deductions, and credit of CDS for the fiscal year ended June 30, 1972.

Cal Comp claimed net operating losses on its tax returns for the fiscal years ended June 30, 1970, and June 30, 1971. These losses were carried back to prior years resulting in refunds of sufficient magnitude to require review by the Joint Committee on Taxation pursuant to section 6405. Accordingly, respondent assigned Revenue Agent Harold Dey (Dey) to audit Cal Comp's returns.

Dey's audit was for the most part limited to items pertaining to Cal Comp. A cursory inspection of that portion of the consolidated return pertaining to CDS was made. However, Dey did not audit any items on that portion of the return nor did he inspect the books and records of CDS. On October 31, 1972, Dey submitted his revenue agent's report substantially sustaining the claimed refunds. The report did not raise any issue as to whether Cal Comp's control of CDS was sufficient to entitle the two corporations to file on a consolidated basis for the fiscal year ended June 30, 1971.

In the course of evaluating Dey's report, a member of the review staff noticed that the June 30, 1971, consolidated return indicated that Cal Comp owned only 65.8 percent of

CDS's stock, a degree of control insufficient to entitle the two corporations to file a consolidated return.[5] The reviewer requested Dey to investigate the apparent discrepancy.

Dey's investigation culminated with a letter to Dey dated January 23, 1973, sent by Arnold Magasinn (Magasinn), Cal Comp's attorney, which included a statement by Charles H. Sword (Sword), senior vice president and secretary of Cal Comp. In the statement, dated October 11, 1972, Sword affirmed that for fiscal year ended June 30, 1971, Cal Comp had 98-percent control of CDS.[6] Dey accepted this statement from Sword as being dispositive of the issue. Accordingly, a letter recommending approval of the refunds was sent to the Joint Committee on Taxation. The committee's approval was granted on May 29, 1973.

Subsequently, Revenue Agent James Zeitz (Zeitz) was assigned to audit Cal Comp's tax return for the year ending June 30, 1972. In reviewing the corporate minutes for that fiscal year, Zeitz noticed entries dated July 17, 1971, and August 31, 1971, which indicated that Cal Comp was contemplating increasing its ownership of CDS from 65.8 percent to 93.7 percent. After verifying the content of the minutes and securing a copy of Dey's earlier report, Zeitz prepared a Reopening Memorandum (Form 4505) for the June 30, 1971, fiscal year contesting CDS's qualification to be included in Cal Comp's consolidated return.

Zeitz's request for reopening obtained final approval on June 10, 1974. Based on the schedules attached to Cal Comp's tax return, Zeitz concluded that the reopening could

---

[5]Sec. 1501 provides: "An affiliated group of corporations shall * * * have the privilege of making a consolidated return * * * in lieu of separate returns."

Under sec. 1504, an affiliated group means one or more chains of includable corporations connected through stock ownership with a common parent if—

(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and

(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.

[6]Our examination of Sword's statement reveals an ambiguity as to whether Cal Comp was including the options to purchase additional CDS stock in the 98-percent figure. In any event, petitioner concedes for purposes of this motion that respondent's characterization of the statement as false and misleading must be accepted by the Court as correct.

be accomplished without an additional inspection of the books of Cal Comp or CDS.[7]

On August 7, 1974, Magasinn, authorized to represent both Cal Comp and CDS, executed a Form 872 extending the period for assessment of taxes due under the June 30, 1971, return of Cal Comp to December 31, 1975. Respondent executed the form on August 9, 1974.

On April 3, 1975, a "30-day letter" was sent to CDS setting forth proposed deficiencies for the taxable fiscal years ended June 30, 1970, June 30, 1971, and March 31, 1972. The basis of these deficiencies was that CDS was not properly includable in Cal Comp's consolidated return until Cal Comp's control of CDS had increased to 93.7 percent. A formal protest was filed by petitioner on June 3, 1975. The protest did not include any contention that the proposed deficiencies were for erroneous taxable years, nor did it state any facts from which such a contention could reasonably be drawn. In November 1975, a District conference was held and at no time during the course of this conference did petitioner's representatives contend that the proposed deficiencies were for erroneous tax years.

Respondent issued a statutory notice of deficiency on December 23, 1975, wherein respondent determined deficiencies against CDS for the taxable years ended June 30, 1970, June 30, 1971, and March 31, 1972. Respondent's determination was based on the position that CDS had been erroneously included in Cal Comp's consolidated returns. At the time the deficiency notice was mailed, respondent had no knowledge that it was for the wrong taxable years.

On March 15, 1976, CDS timely filed a petition in this Court for redetermination of the deficiencies determined in the December 23, 1975, deficiency notice. Nowhere in its 18-page petition did CDS contend that the deficiencies had been determined for erroneous taxable years. Almost 3 years later, on approximately January 25, 1979, new counsel entered the case on behalf of CDS and for the first time raised the contention that the deficiencies were for erroneous taxable periods.

---

[7]On brief, respondent argues that the restrictions imposed on him under sec. 7605(b) (written notice to taxpayer before a second inspection of books) magnified the effect of Sword's misrepresentation. We note, however, the inapplicability of sec. 7605 regarding CDS since a first inspection of CDS's books was never made.

Subsequently, a motion for judgment on the pleadings was filed by petitioner, contending that the deficiencies were for erroneous taxable years. On March 8, 1983, in *Century Data Systems, Inc. v. Commissioner*, 80 T.C. 529 (1983) (hereinafter *Century Data I*), we granted petitioner's motion, finding that respondent's statutory notice of deficiency was invalid. On March 11, 1983, this Court entered an order dismissing the case for lack of jurisdiction. As more fully explained in the Court's opinion in support of its order, we determined that inasmuch as CDS had continued to keep its books on a calendar year basis and did not become a member of the Cal Comp affiliated group until April 3, 1972, CDS had no separate taxable years ended June 30, 1970, June 30, 1971, and March 31, 1972. Rather, petitioner's correct taxable years were December 31, 1970, December 31, 1971, and April 3, 1972. 80 T.C. at 531 (*Century Data I*).

The Commissioner declined to appeal the Court's order dismissing the case and the order became final on June 9, 1983. On November 7, 1983, respondent issued a second notice of deficiency to CDS. In accordance with this Court's determination as to petitioner's correct taxable years, this notice determined deficiencies for the years ended December 31, 1970, December 31, 1971, and April 3, 1972. The basis of these deficiencies is that CDS was erroneously included in Cal Comp's consolidated returns for the fiscal years ended June 30, 1971, and June 30, 1972.

On February 1, 1984, CDS timely filed the petition herein contesting the deficiencies and raising the statute of limitations as a defense. Shortly thereafter, petitioner filed the instant motion for judgment on the pleadings. Respondent is now confronted with the argument that the assessment of the determined deficiencies is barred by the statute of limitations. In his answer to the petition, respondent contended that petitioner was equitably estopped from raising the statute of limitations as a bar to assessment. Alternatively, he alleged that the statute of limitations did not bar the assessment of the deficiencies.

On brief, respondent concedes that the statute of limitations had expired prior to the issuance of the second statutory notice of deficiency but continues to maintain

that petitioner is nevertheless equitably estopped from raising the statute of limitations defense. Respondent's argument is twofold: first, that petitioner made a false and misleading statement, through its senior vice president (Sword), which caused respondent to issue a statutory notice of deficiency for erroneous taxable years; and second, that petitioner misled respondent by remaining silent as to the correct taxable years, where, but for petitioner's "misleading stony silence," a valid statutory notice could have been issued prior to the expiration of the statute of limitations.

Conversely, petitioner, relying on *Atlas Oil & Refining Corp. v. Commissioner*, 22 T.C. 552 (1954) (hereinafter *Atlas Oil II*), and a long list of other cases, contends that respondent's assessments are long barred by the statute of limitations and that petitioner is not equitably estopped from asserting the same. Petitioner, in the procedural context of this motion, accepts respondent's allegation that Sword's statement was false and misleading but, nevertheless, argues that the statement in no way caused respondent's failure to issue a correct statutory notice of deficiency in a timely manner. Moreover, the blame for respondent's failure to ascertain petitioner's correct taxable years must lie with respondent's own agents for failing to examine the books and records of CDS which were readily available. Petitioner contends that there is no affirmative obligation to correct mistakes made by respondent when, as here, petitioner did nothing to facilitate the mistake.

In spite of respondent's attempts to distinguish this case from *Atlas Oil II*, we conclude that this case is materially indistinguishable and therefore compels the identical result. Accordingly, we hold that petitioner is not equitably estopped from asserting the statute of limitations defense.

The facts of *Atlas Oil & Refining Corp. v. Commissioner*, 17 T.C. 733 (1951) (hereinafter *Atlas Oil I*), and *Atlas Oil II* may be briefly summarized as follows. Shortly after the taxpayer in *Atlas Oil I* incorporated, it adopted through its bylaws a fiscal year ended November 30. However, in conforming with Interstate Commerce Commission regulations, the taxpayer formally closed its books on December 31, 1942, and December 31, 1943. The taxpayer filed its

1942 and 1943 Federal income tax returns on a fiscal year basis. Respondent subsequently determined deficiencies in petitioner's fiscal years ended November 30, 1942, and November 30, 1943. The Court found that the taxpayer's books were indeed kept on a calendar year basis. The Court then entered decisions for the taxpayer since the deficiencies were incorrectly determined on a fiscal year basis. 17 T.C. at 740 (*Atlas Oil I*).

Respondent did not appeal the decision in *Atlas Oil I*, but rather issued new notices of deficiencies for the correct taxable years ended December 31, 1942, and December 31, 1943. We held that the statute of limitations barred the assessment of the determined deficiencies. 22 T.C. at 561 (*Atlas Oil II*).

In *Century Data I* we followed *Atlas Oil I* stating that "On substantially identical facts and in a Court-reviewed opinion, this Court held it is without jurisdiction to redetermine a deficiency for the incorrect taxable years." 80 T.C. at 532 (*Century Data I*). Respondent's response to *Century Data I* is identical to his response to *Atlas Oil I*; i.e., the issuance of a new statutory notice of deficiency for the correct taxable years. Here, as in *Atlas Oil II*, respondent is confronted with the argument that the assessment of such deficiencies is barred by the statute of limitations.

Respondent has limited his argument in this case to the single contention that petitioner is equitably estopped from asserting the statute of limtations. In *Atlas Oil II* we found for the taxpayer on this issue, stating that "we can find no error or wrong committed by the taxpayer which can form the basis for the application of estoppel." 22 T.C. at 559.

For a court to apply the doctrine of equitable estoppel: "(1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. [*Lignos v. United States*, 439 F.2d 1365, 1368 (2d Cir. 1971).]" *Piarulle v. Commissioner*, 80 T.C. 1035, 1044 (1983). It is fundamental to the doctrine of

estoppel that the party raising the issue must have been misled in reliance upon the representations of his opponent. *Piarulle v. Commissioner*, 80 T.C. 1035, 1044 (1983). To be estopped from asserting the statute of limitations, petitioner must be shown to have taken some action which led respondent to postpone until after the statute expired the issuance of a deficiency notice that he was otherwise prepared to mail on a timely basis. *Stearns Co. v. United States*, 291 U.S. 54 (1934); see 22 T.C. at 559 Atlas Oil II).

Respondent raises two factual distinctions between the present case and *Atlas Oil II*. First, affirmative misrepresentation of the type made by CDS through its officer Sword was not present in *Atlas Oil II*. Second, unlike *Atlas Oil II*, where the taxpayer argued and respondent rejected the contention that the taxpayer was on a calendar year basis, CDS failed to contend that its tax liability should be computed on the basis of calendar years until long after the expiration of the statute of limitations, despite several opportunities to make such contention. Thus, respondent asserts that he is not seeking to overturn *Atlas Oil II*, but rather is "only trying to walk in the door which the case clearly left open."

Respondent's first argument is defective in several respects. To begin with, the affirmative misrepresentation complained of goes only to the question of whether CDS was properly included in Cal Comp's consolidated return, not to the question of the correct taxable years. The defect in the original deficiency notice resulted from the erroneous determination of deficiencies computed on a fiscal year basis when petitioner had in fact closed its books on a calendar year basis. 80 T.C. at 537 (*Century Data I*). The manner and time in which petitioner closes its books are dispositive of the correct taxable year issue, irrespective of the includability or excludability of CDS on Cal Comp's consolidated return. 80 T.C. at 537 (*Century Data I*); accord 17 T.C. at 739 (*Atlas Oil I*).

Further, respondent's argument does not comport with his own allegations of fact. Specifically, respondent refused to accept the representation of Sword well in advance of the expiration of the statute of limitations.[8] In fact, it was

---

[8]For purposes of this motion, we accept respondent's calculation as to the statute of

precisely respondent's "non-reliance" on Sword's statement which led to the Reopening Memorandum, the "30-day letter" and the December 23, 1975, notice of deficiency. Having refused to accept the misrepresentation, respondent cannot now argue that he relied to his detriment on such misrepresentation.

Finally, regardless of any affirmative misrepresentation, the original notice of deficiency was timely issued by respondent. Since we have found that petitioner's misrepresentation related to its right to file a consolidated return, and not to the correct taxable year, petitioner did not prevent respondent from issuing what would otherwise have been a timely deficiency notice. Compare *Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934).

As it turned out, however, there were no deficiencies because CDS did not have the taxable years indicated in the December 23, 1975, notice of deficiency. 80 T.C. at 531 (*Century Data I*). Nevertheless, respondent cannot now legitimately argue that he was misled by petitioner's affirmative misstatement that he relied on that statement and that it caused him to fail to timely issue a notice of deficiency, none of which comports with the facts at hand.[9]

Respondent's second argument, although somewhat more perplexing, is nonetheless insufficient to support his contention that petitioner should be estopped from asserting the statute of limitations defense. Respondent's position, simply stated, is that petitioner had an affirmative obligation to inform respondent that the statutory notice of deficiency was defective.

In *Atlas Oil II*, the taxpayer took the position that his tax liability should be computed on a calendar year basis in order to obtain the benefits of section 112(b)(10) of the 1939 Code (as in effect for 1943), which was not applicable to

---

limitations expiration dates being Mar. 16, 1976, for the calendar year 1971 and the short taxable year ended Apr. 3, 1972, and Dec. 31, 1975, for the calendar year 1970.

[9]In the case of CDS's short taxable year ended Apr. 3, 1972, the defect in the Commissioner's original deficiency notice in *Century Data I* resulted from his failure to correctly determine the exact date of the transaction whereby Cal Comp acquired sufficient additional shares of CDS common stock to give Cal Comp an 80-percent equity interest in the corporation. Respondent concedes that this miscalculation is in no way related to Sword's affirmative misstatement and does not rely on such misstatement to support his estoppel argument for the taxable year ended Apr. 3, 1972. Rather, respondent's sole contention regarding the taxable year ended Apr. 3, 1972, is that CDS should have brought the mistake to respondent's attention.

taxable years beginning before January 1, 1943. 22 T.C. at 555 (*Atlas Oil II*). Respondent rejected this contention. We found this to be a significant factor in rejecting respondent's estoppel argument. 22 T.C. at 560 (*Atlas Oil II*).

Respondent's efforts to distinguish *Atlas Oil II* from this case fail to recognize that the linchpin of our decision in *Atlas Oil II* was that the predicament respondent found himself in was not created by the taxpayer. 22 T.C. at 560. The fact that petitioner failed to argue that it was a calendar year taxpayer cannot of itself redefine the responsibility imposed by law on respondent. The returns filed by CDS, although erroneous, nevertheless included the periods now in question. As we held in *Atlas Oil II*, "In the absence of any evidence or claim that such return was false or fraudulent with intent to evade tax, it became the duty of the Commissioner to determine, within the time provided by law, whether or not the return was erroneous in any respect." 22 T.C. at 556; *Mabel Elevator Co. v. Commissioner*, 2 B.T.A. 517, 519 (1925).

Respondent does not contend that either CDS or Cal Comp had any actual knowledge of the substantive significance of the defective statutory notice of deficiency prior to expiration of the statute of limitations or that the companies made a conscious decision to permit the statute to expire before they notified the Commissioner of the problem. Rather, respondent argues that each taxpayer is charged with constructive knowledge of its own taxable years and is required as a matter of law to inform respondent if deficiencies are being determined for wrong taxable years.

In support of his position, respondent cites dictum in two cases, neither of which is analogous to the issue before us. Both cases deal with a taxpayer's obligation to abide by his affirmative representations to the Commissioner where the Commissioner has relied on those representations.

In *Lignos v. United States*, 439 F.2d 1365 (2d Cir. 1971), the taxpayers had agreed to a simultaneous administrative settlement of the year 1961, which was docketed in the Tax Court, and the years 1962 and 1963, which were undocketed. Subsequently, the taxpayers sued for a refund for the years 1962 and 1963. The District Court granted

summary judgment to the Government, holding the taxpayers estopped from claiming the refund because their failure to indicate that they did not consider the settlement of 1962 and 1963 to be final was a "wrongful misleading silence." The Second Circuit reversed and remanded stating:

Obviously, the taxpayers played their cards close to the vest, although whether excessively so remains to be determined. The key questions are whether there was a false representation or wrongful misleading silence by plaintiffs regarding their intention not to claim a refund for 1962 and 1963, upon which the Government relied to its detriment. [439 F.2d at 1368-1369.]

Thus, unlike here, the crucial question in *Lignos* was whether representations made in entering into a consensual agreement regarding the settlement of litigation was sufficiently contrary to the true intentions of the taxpayers to constitute a wrongful misleading silence.

In *Cary v. Commissioner*, 48 T.C. 754 (1967), the taxpayer had executed a consent form to extend the statute of limitations which was intended to be for the year 1957 but which erroneously listed the extension date, 6/30/62, as the taxable year. Respondent unilaterally corrected the error before executing the form and then relied on its validity. The taxpayer argued that the consent form was invalid and therefore the statute of limitations had expired. Respondent countered by contending that the taxpayer should be estopped from raising the statute of limitations defense.

We rejected respondent's argument because the facts indicated that respondent was well aware of the error in the form. However, we went on to hypothesize a different scenario upon which estoppel might be based:

Here the facts show that petitioner on the advice of his accountant concurred in by his attorney deliberately sent a document to the Internal Revenue Service which he and his representatives knew contained an error which he and his representatives considered material. Neither petitioner nor his representatives directed the attention of the Internal Revenue Service to the error in the instrument. Had no change been made in the instrument in the Internal Revenue Service, these facts might justify the conclusion that petitioner was estopped to deny that the document he submitted to the Internal Revenue Service was an extension of the statute of limitations on assessment for the year 1957 because of petitioner's misleading the respondent to respondent's detriment. [48 T.C. at 765.]

Again, respondent has failed to recognize the crucial significance of the hypothetical affirmative misrepresentation as a condition precedent to application of the estoppel doctrine based on a wrongful misleading silence.

Here, we can find no affirmative misrepresentation by petitioner pertaining to the correct taxable years of CDS which would justify categorizing the failure to inform respondent of the defective deficiency notice as a wrongful misleading silence. Rather, the responsibility for the error must rest with respondent's agent, who was charged with the responsibility of determining petitioner's correct tax liability. As long as the necessary books and records are available to the examining agent, he alone is responsible for developing whatever data is necessary for the proper computation of tax liability. See, e.g., *Joyce v. Gentsch*, 141 F.2d 891, 896-897 (6th Cir. 1944); *Helvering v. Schine Chain Theatres*, 121 F.2d 948, 950 (2d Cir. 1941); *Helvering v. Brooklyn City R. Co.*, 72 F.2d 274, 275 (2d Cir. 1934); *Pancoast Hotel Co. v. Commissioner*, 2 T.C. 362, 368 (1943); *Mabel Elevator Co. v. Commissioner*, 2 B.T.A. 517, 519 (1925).

The agent had available to him the books and records of CDS. Moreover, prior to the erroneous inclusion on Cal Comp's consolidated return, CDS had filed on a calendar year basis. Regardless of the reasonableness of the agent's action, the fact remains that he chose not to examine the books and records of CDS before computing the adjustments to CDS's tax liability. This decision was made of his own accord, without any misrepresentations by petitioner, and unfortunately for respondent led to the issuance of a defective notice of deficiency.

Furthermore, the consolidated return defect which the Joint Committee examiner first detected and which the agent himself confirmed through his perusal of the corporate minutes might have alerted a more inquisitive individual to the potentiality of other problems. That the agent did not choose to pursue this trail should not be left at petitioner's door.

We reject respondent's contention that petitioner had an affirmative obligation to correct the erroneous assumption made by the agent that CDS was a fiscal year taxpayer,

where, as here, petitioner did nothing to encourage the faulty assumption. Accordingly, we hold that petitioner is not equitably estopped from asserting the statute of limitations defense.

Respondent has conceded that the statute of limitations had expired prior to the issuance of the corrected deficiency notice on November 7, 1983.[10] It necessarily follows that the statute of limitations bars the assessment of the deficiencies determined here. As stated in *Atlas II:*

> It may appear to be harsh to the Government to hold that the statute of limitations bars the assessment of the deficiencies here asserted; but the expiration of the period of limitations often works hardships on one party or the other. [22 T.C. at 561.]

Whatever harshness may be present here is mitigated by the knowledge that respondent had the opportunity and the means to issue a timely notice of deficiency for the current taxable years, but failed to do so. The consequences of respondent's agent's actions must be born by respondent and not imputed to petitioner.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[10]Respondent's concession that the statute of limitations had expired prior to the issuance of a corrected deficiency notice precludes a reexamination of our holding in *Atlas Oil & Refining Corp. v. Commissioner*, 22 T.C. 552, 556 (1954) (*Atlas Oil II*), that the statute of limitations begins to run once returns have been filed including the correct periods in issue, irrespective of the erroneous nature of the returns filed. In light of the Court's recent line of cases delineating what constitutes a return, respondent's previously rejected "no return" argument might well deserve another look. However, any reexamination of this Court's *Atlas Oil II* holding would only be appropriate after the Court has been afforded the benefit of comprehensive briefs addressing the issue.