ARTHUR C. SCHWOTZER AND ESTATE OF JANET A. SCHWOTZER, Deceased, ARTHUR C. SCHWOTZER, Executor, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schwotzer v. Commissioner
Docket No. 14474-84.
United States Tax Court
T.C. Memo 1986-161; 1986 Tax Ct. Memo LEXIS 450; 51 T.C.M. (CCH) 902; T.C.M. (RIA) 86161; April 21, 1986. David I. Cohen and Douglas Y. Christian, for the petitioners. Russell F. Kurdys, for the respondent. FEATHERSTON
MEMORANDUM FINDING OF FACT AND *451 OPINION FEATHERSTON, Judge: This case was assigned to Special Trial Judge Hu S. Vandervort pursuant to the provisions of section 7456 and Rules 180 and 181. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE VANDERVORT, Special Trial Judge: By statutory notice dated February 23, 1984, respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1973
$25,025.10
1974
$ 9,582.91
1976
$ 509.70
1977
$ 1,338.15
Pursuant to an order dated April 12, 1985, calling for a partial trial, the only issues presently before the Court involve the statute of limitations for the taxable years 1973 and 1974. The issues for determination are: (1) whether, after a Form 872-A, Special Consent To Extend The Time To Assess Tax, had been executed with restrictions by petitioners, respondent's failure to notice the restrictions when executing *452 the consent renders it invalid to extend the statute of limitations; and (2) if the consent is invalid, whether petitioners are estopped from asserting its invalidity. FINDINGS OF FACT At the time the petition was filed in this case, petitioner Arthur Schwotzer was a resident of McMurray, Pennsylvania. [2]
Petitioner Arthur Schwotzer was involved in real estate development in the Pittsburgh area. He retained Touche Ross & Co. (Touche Ross) to handle his personal tax affairs, as well as his business affairs, including those of Crossgates, Inc. Sometime in the early 1970's petitioners invested personally in a real estate limited partnership called State Manor. When, in 1976, an audit of petitioners' joint Federal income tax returns for 1973 and 1974 was completed, the Internal Revenue Service (IRS) disallowed the losses claimed by petitioners as a result of their investment *453 in State Manor. In addition, several other issues not pertaining to State Manor were addressed in an audit report on September 22, 1976 (the 1976 report). [3]
Petitioner did not accept any of the adjustments in the 1976 report and, on February 2, 1977 the Pittsburgh District Director issued a 30-day letter. On April 4, 1977, on behalf of petitioners, Touche Ross submitted a protest letter to the IRS. The inability of the parties to come to any agreement led to the execution of four unrestricted Form 872 consents by September of 1979. The fourth Form 872 held the statute of limitations open until December 31, 1980. During the period from the completion of the audit in 1976 up until September of 1980, the petitioners' file had been placed in "suspense" with the IRS. *454 All tax returns showing State Manor losses were suspended, awaiting the outcome of a case pending in the Court of Claims (now the United States Claims Court). Richard Kraus, a member of the Quality Review Staff for the IRS in Pittsburgh, was responsible for obtaining consents to extend the statute of limitations in "suspense" cases dealing with the State Manor limited parntership. In September of 1980, Kraus obtained the Schwotzer file and examined the prior consents. The examination yielded four unrestricted Form 872, Consent to Extent the Time to Assess Tax, consents, with no restriction on either the front or the back of the forms. Kraus then prepared an 872-A Special Consent To Extend The Time To Assess Tax (Form 872-A) in the usal manner, sending an original plus a copy to the taxpayers and retaining a carbon copy for his own files. When the Schwotzers received the Form 872-A consent sometime in September of 1980, they referred the matter to Farrell Rubenstein of Touche Ross. Rubenstein was not personally aware of the status of the audit involving the 1973 and 1974 tax returns of the Schwotzer's. Petitioners' tax matters had been handled by a Mr. Hoffman. However, on *455 August 31, 1980, Hoffman retired from Touche Ross. Before leaving Touche Ross, Hoffman did not inform Rubenstein of any particularities involving the Schwotzer case. Although not personally involved, Rubenstein was aware that the Schwotzers were involved in the State Manor real estate partnership. Rubenstein ordered the tax department to prepare a restricted consent because he believed that the only unsettled issues in the case were related to State Manor. The tax department affixed the standard restrictive language used by Touche Ross in cases having State Manor limited partnership issues involved. [4]
*456 The Form 872-A sent out by Kraus had space for the taxpayers' names and the years involved at the top of the front of the form. This is followed by pre-printed language detailing the terms of the waiver as set forth by the IRS. The bottom half of the page contained the signature area. There is no room for any additions, such as restrictions on the front of this form. However, midway down the form, there are directions stating that instructions on how to fill out the form are listed on the backside. It is below these instructions listed on the backside, that the tax department affixed the restrictions. [5] However, there was no indication on the front side of the form indicating that one should see the reverse side for restrictions. *457 Petitioners received the Form 872-A, the restriction typed on the backside, with directions from Touche Ross to sign, date and send the form back to the IRS. Petitioners were aware of the restrictions placed on the consent when they executed the Form 872-A. Therefore, it was the intent of the Schwotzers to sign a restricted 872-A consent. There was no communication from Touche Ross to the IRS of the intention to effect a restricted consent in this case. Generally, it is the practice of Touche Ross to inform the IRS, either verbally or in written form, that a restriction was placed on the consent. On October 1, 1980, Kraus received the Form 872-A from the Schwotzers. He signed the form, failing to observe the restrictions placed on the back. Had Kraus observed the restrictions, he would not have executed the document on behalf of the Commissioner. Kraus testified that it was the policy stated in the Internal Revenue Manual not to execute restricted consents in cases having more than two outstanding issues. At the time Kraus executed the restricted Form 872-A there were two unresolved issues in 1973 and three unresolved issues in 1974. After Kraus obtained the consent, the *458 Schwotzer file was placed back in "suspense." One year and three months later in January of 1982, Jim Kasenic, a member of the Quality Review Staff in Pittsburgh was examining the Schwotzer file in preparation for moving it into 30-day letter status when he discovered the restricted consent. According to the Form 872-A, the statute of limitations had run over a year ago on all issues not pertaining to the State Manor partnership. Kasenic instructed agent Pat Mignogna to tell the Schwotzers that the restriction was not valid. Mignogna talked to an unidentified representative of Touche Ross sometime in late January of 1982 stating that the IRS was preparing a second 30-day letter and that they were disregarding any restrictive language in the Form 872-A consent.This 30-day letter was sent to petitioners on April 30, 1982. This report was substantially similar to the 1976 report. Meanwhile, the box containing the Schwotzer's files for taxable years 1973 and 1974 was lost in transit from Touche Ross to National Underground Storage. This occurred sometime in the first week of February 1982. At the time of trial, the box was still missing. In response to the 30-day letter, Touche *459 Ross filed a protest letter. No mention was made of the restricted consent. [6] After receiving the protest, the case was transferred to the Appeals Division in Pittsburgh where it was placed in the hands of Appeals Officer Tom Valancius in July of 1982. Discussions commenced on the State Manor issue between Valancius, Touche Ross and attorneys for the partnership. Tentative agreements were reached between the parties in early 1983. In the beginning of June 1983, Herbert Sirowitz began handling the Schwotzer case for years 1973 and 1974. By the end of June, a tentative settlement had been reached on the non-State Manor issues. Subsequently, the IRS sent a Form 870 to close all matters in the years 1973 and 1974. Touche Ross responded with a request for a copy of the Schwotzer's 1973 and 1974 tax returns and any consents which had been executed. Sirowitz *460 requested these items because the Touche Ross files had been lost and he wanted to verify all calculations and check to see that the statute of limitations was still open. While complying with this request, Valancius became aware of the restrictions on the Form 872-A in question. Valancius had been unaware of the restrictions when he negotiated the tentative settlement of the non-State Manor issues with Touche Ross. As a result of this discovery, the IRS requested, and Lawrence H. White of Touche Ross filed, a supplemental protest on the issue of the restricted consent. Ultimately, the IRS rejected the Touche Ross position on the restricted Form 872-A and declined an offer to settle the case on the consent issue. On February 23, 1984 a notice of deficiency was issued to petitioners for taxable years 1973, 1974, 1976 and 1977 with an asserted deficiency of $25,025.10 in 1973 and $9,582.91 in 1974. OPINION Section 6501(a) sets out the general rule that taxes must be "assessed within 3 years after the return was filed * * *." [7] There are several exceptions to this rule. The parties *461 may consent to extend the statute of limitations pursuant to section 6501(c)(4). However, absent a valid section 6501(c)(4) agreement, the statute of limitations ran for taxable years 1973 and 1974 on April 15, 1977 and on April 15, 1978, respectively. Therefore, without a valid section 6501(c)(4) agreement, the notice of deficiency, issued on February 23, 1984, is untimely and the assessment of any tax for the years 1973 and 1974 is barred. [8]
*462 Respondent and petitioners stipulated to the validity of four section 6501(c)(4) agreements. The last of these Form 872's, Consent To Extend The Time To Assess Tax, extended the statute of limitations to December 31, 1980. Four months prior to the running of the statute the IRS prepared a Form 872-A. Petitioner's representative, Touche Ross, affixed language restricting the 872-A waiver of the statute of limitations to issues involving petitioners' association with the State Manor limited real estate partnership. On October 1, 1980, 90 days before the statute of limitations was to expire, Kraus executed the Form 872-A without observing the restrictive language. The Form 872-A was put away in the petitioners' file and left in "suspense" until January of 1982. At this time, Kasenic pulled the file to review it and found the restricted Form 872-A. Thus, it is this fifth consent, the Form 872-A, over which the controversy arises in this case. Since petitioners have shown that the statutory notice of deficiency was issued beyond the normally applicable statute of limitations, the Commissioner *463 has the burden of going forward to show that the statute of limitations had not expired prior to the issuance of the statutory notice of deficiency. Adler v. Commissioner,85 T.C. 535, 540 (1985). This burden can be discharged by introducing into evidence a consent, valid on its face, which extends the period of limitation for assessment up to the date of the mailing of the statutory notice of deficiency. Concrete Engineering Co.,19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). The Form 872-A in question is valid on its face, limiting the consent to the State Manor issues. Respondent argues that there was no mutual assent to the placing of the restrictive language on the Form 872-A in question, and, therefore, the consent is invalid. However, because petitioners and their accountants engaged in wrongful misleading silence and misrepresented facts to the IRS, petitioners should be estopped from arguing the invalidity of the Form 872-A. As a result the Form 872-A should be enforced, without restriction against the petitioners. I. Validity of Form 872-A
*464 The purpose of a consent is to allow the IRS an extended period in which to assess the tax.The consent itself is not a contract; it is essentially a unilateral waiver of a defense by the taxpayer. Stange v. United States,282 U.S. 270 (1931); Tallal v. Commissioner,77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). Signature by the IRS does not turn the waiver into a contract. Florsheim Bros. Drygoods, Co. v. United States,280 U.S. 453 (1930); Stange v. Commissioner,supra.Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension. Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). The term agreement means a manifestation of mutual assent. S. Williston, Contracts 6 (3d ed. 1957). "[T]he very essence of an agreement is that the parties mutually assent to the same thing * * *." Hahnemann Medical College and Hospital of Philadelphia v. Hubbard,267 Pa. Super. 436, 438, 406 A.2d 1120, 1122 (1979). The record in this case demonstrates quite clearly that the parties *465 did not intend to execute the same document.The Schwotzers and Touche Ross clearly manifested their intent to further extend the statute of limitations solely on the issue of the State Manor real estate limited partnership. Rubenstein, assuming there were no other issues pending, had the standard restrictive language affixed, language used previously on consents dealing with State Manor. The petitioners, aware of the language and counseled by Touche Ross to sign, date and return the restricted Form 872-A, had no intention of signing an unrestricted consent. It is also clear that respondent did not intend to sign the restricted Form 872-A consent. Had Kraus realized that the Form 872-A was a restricted consent, he would not have signed it. It was Kraus' understanding that the policy outlined in the Internal Revenue Manual discouraged acceptance of restricted consents in cases having more than two unsettled issues. The fact that Kraus did sign the consent can be attributed to his failure to carefully examine the document before affixing his signature. Kraus was handling all returns dealing with the State Manor partnership and was responsible for acquiring consents in cases which *466 were currently in "suspense." Less than one month earlier Kraus ordered to be prepared two Form 872-A consents with restrictions on the backside, in the same place Touche Ross placed the restrictions at issue. Yet, upon receiving the Schwotzer Form 872-A for execution, he did not examine the second side of the form because "* * * I knew from experience that the only thing on the back of the form would have been the instructions on how to prepare an 872-A, and I would have no need to turn it over." The fact is that the only space available to place restrictions on the Form 872-A sent to petitioners was on the backside; Kraus knew this and should have exercised greater care in inspecting the consent. The special consent Form 872-A is not ambiguous on its face. However, it is apparent that there was no mutual assent to the terms of the Form 872-A consent. Piarulle v. Commissioner,supra;Hahnemann Medical College and Hospital of Philadelphia v. Hubbard,supra. Therefore the consent is invalid and does not extend the statute of limitations beyond December 31, 1980. Piarulle v. Commissioner,supra.
II. Estoppel
*467 A taxpayer may be estopped from relying on the invalidity of an agreement to extend the statute of limitations where the Government reasonably relies, to its detriment, upon the invalid waiver executed by the petitioner. Benoit v. Commissioner,238 F.2d 485 (1st Cir. 1956), vacating and remanding 25 T.C. 656 (1955). The requirements necessary for the application of equitable estoppel, adopted in Piarulle v. Commissioner,80 T.C. 1035, 1044 (1983), are: (1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom estoppel is claimed. [Citation omitted] The critical focus of respondent's estoppel argument is the question of whether petitioners and their representatives intended to mislead the IRS when they placed the restrictions on the Form 872-A. To support *468 the position that this case is appropriate for the application of equitable estoppel, respondent argues that petitioners engaged in wrongful misleading silence regarding the placement of restrictions on the consent form. Further, petitioners continued this misleading silence by negotiating a settlement of the issues which would have been barred by the restrictions they placed on the consent form. It was only after a tentative settlement was reached that petitioners, through their representatives, brought up the issue of the restrictions placed on the Form 872-A consent. Respondent concludes that, taken as a whole, these facts lead to the conclusion that petitioners had an intent to mislead the IRS when they placed the restrictions on the Form 872-A consent. As a preliminary matter we note that the actions relevant to the determination of whether estoppel shall be applied in this case are those which took place between the time the IRS sent the Form 872-A consent and the time the prior consent was due to expire. That is, beyond December 31, 1980 (when the prior consent was due to expire), all actions of the parties are irrelevant because the statute of limitations would have expired *469 on that date if the Form 872-A in question was invalid. Thus, we will examine petitioners' actions only during the relevant time period to determine whether there was an intent to mislead the IRS. When the Form 872-A consent was received by Touche Ross from petitioners, Mr. Hoffman, the individual who had been handling the Schwotzer case, had retired. No one at Touche Ross was apprised of the status of the case before Mr. Hoffman's departure. Upon receiving the Form 872-A consent from petitioners, Rubenstein assumed that the only issues left were those pertaining to the State Manor partnership. Rubenstein then ordered the tax department to affix the standard restrictive language which Touche Ross had previously used in consents covering limited partnership issues. This restrictive language took up a large portion of the second side of the Form 872-A consent. The Form 872-A consent was then signed by petitioners and sent to the IRS. Upon receipt by the IRS, the Form 872-A consent was examined by Kraus. Although Kraus had inspected the front and back of the prior consents executed in the Schwotzer case, he neglected to carry out such an examination of this Form 872-A. In reviewing *470 the obviously two-sided form we believe that Kraus should have made a careful examination of both the front and the back. The most cursory examination of the second side of the form reveals the restrictive language. In the past, this Court has applied the doctrine of equitable estoppel when taxpayers have made subtle alterations to the preprinted language of a consent form. See Herschler v. Commissioner,T.C. Memo. 1984-569. However, in this case there was no alteration of the preprinted language and the placement of the restriction on the Form 872-A was far from subtle. Therefore, as we have stated before, "[i]t would be most unfair to impose some sort of estoppel against [petitioners] in this case because respondent's employees did not exercise reasonable diligence in reading the special consent form before it was executed on behalf of respondent." See Schenk v. Commissioner,T.C. Memo. 1976-363. Accordingly, we find that petitioners did not intend to mislead the IRS when they placed the restrictive language on the Form 872-A consent. Instead we find that respondent's agent's own carelessness led to the expiration of the statute of limitations *471 on December 31, 1980 without the IRS having acquired a valid consent. "The consequences of respondent's agent's actions must be born by respondent and not imputed to petitioner." Century Data Systems, Inc. v. Commissioner,86 T.C. No. 11 (filed February 11, 1986). Therefore, with respect to the taxable years 1973 and 1974, the notice of deficiency dated February 23, 1984 is untimely. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless stated otherwise.↩
2. Janet Schwotzer, deceased, is a petitioner in this case by virtue of having filed a joint Federal income tax return with Arthur C. Schwotzer. Janet Schwotzer died, naming Arthur Schwotzer executor, after filing the joint Federal income tax returns in question and prior to the filing of the petition.↩
3. The audit report for 1973 adjusted an item totalling $26,850 due to a question about lots petitioner received from Crossgates, Inc. and, disallowed a $35,362 loss from State Manor. In 1974 there was a disallowance of a $7,552 loss resulting from a disposition of a joint venture, a $1,503 adjustment made due to an alleged constructive dividend received, and a disallowance of a $31,755 loss from State Manor.↩
4. "The amount of any deficiency assessment is to be limited to that resulting from: (1) any carryover or continuing tax effects caused by adjustments to any prior tax return; (2) any adjustments to our share of any item of income, gain, loss, deduction, credit and/or other distributions from the entity known as State Manor Associates; (3) any adjustments which affect your basis in the aforementioned entity; (4) any adjustments to the returns of the aforementioned entity which also affect your return; (5) any adjustments to your return caused by the determination, if any, of the Commissioner based on acts whether of commission or omission, taken by you with reference to an interest in the entity; and/or acts, whether of commission or omission, taken by an individual or organization dealing with the entity; and/or the act of curing any defect with respect to interest in the entity and (6) any consequential changes to other items and other years based on such adjustments."↩
5. Although this particular Form 872-A was sent out to the Schwotzers in September of 1980, the IRS had revised the Form 872-A as of September 1980. The new Form 872-A has a change in format. The signature area is moved to the back of the form which results in an entirely filled backside and a frontside with the lower portion blank. Therefore, if additions are to be made they would have to be put on the front of the form. Apparently this revised Form 872-A consent was not available for use in the Pittsburgh IRS office.↩
6. It is not clear from the record, nor have the parties chosen to enlighten the Court as to whom, if anyone, was handling the Schwotzer case for Touche Ross at this time. It is clear that a Herbert Sirowitz took over the management of the case in June of 1983 with some assistance from Lawrence H. White in August of 1983.↩
7. A return filed before the due date is considered filed on the date it is due. Section 6501(b)(1)↩. 8. Sec. 6501(c)(4) provides as follows: (4) EXTENSION BY AGREEMENT.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in Chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩